660 So.2d 237 (1995)
Stanley Ray ROGERS, Appellant,
v.
STATE of Florida, Appellee.
No. 76456.
Supreme Court of Florida.
May 11, 1995.
Rehearing Denied September 11, 1995.
*238 Richard L. Jorandby, Public Defender and Jeffrey L. Anderson, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Stanley Ray Rogers, a prisoner under sentence of death, appeals his conviction of first-degree murder and the penalty imposed. He also appeals his convictions and sentences for two counts of kidnapping and one count of attempted sexual battery. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
Rogers was convicted of fatally shooting Mark Hastings, a man who agreed to give him a ride home from a nightclub. Because we find a lack of evidence to support a first-degree murder conviction, we reverse Rogers' conviction and remand with directions that the trial court enter a judgment of guilty of second-degree murder and resentence Rogers. In addition, we reverse Rogers' convictions and sentences for attempted sexual battery and kidnapping.
The jury convicted Rogers of first-degree premeditated murder and first-degree felony murder, then recommended death by a vote of ten to two. The trial judge followed the jury's recommendation and sentenced Rogers to death. In imposing the death penalty, the trial judge found three aggravating factors: (1) the murder was committed by someone under a sentence of imprisonment; (2) Rogers was previously convicted of another capital felony or a felony involving the use or threat of violence to the person; and (3) Rogers committed the murder while engaged in the commission of certain enumerated felonies. §§ 921.141(5)(a), 921.141(5)(b), 921.141(5)(d), Fla. Stat. (1989). The trial judge found no statutory or nonstatutory mitigating factors.
Rene Daniel met Mark Hastings at a club on April 2, 1989, while she was attending a going-away party with friends. Daniel stayed at the club after her friends left and talked to Hastings. The two walked to Daniel's car at about 12:30 a.m. While the two talked in the parking lot, a man, later identified as Rogers, approached them and asked for a flashlight. Although neither Daniel nor Hastings had a flashlight, Hastings suggested that the man ask the club's bouncer for one. Instead, Rogers went to his car, which he had been trying to start. Rogers later returned to Daniel and Hastings and asked for a ride to his home about a half-mile away. Daniel and Hastings agreed to give him a ride. Although it was Daniel's car, Hastings drove. Daniel sat in the passenger seat and Rogers rode in the back seat.
Daniel testified that she turned around as they drove and saw Rogers holding a gun to the back of Hastings' head. Rogers then told Daniel to take off her clothes, but she refused. Rogers later reached over the seat and squeezed her left breast. Daniel testified that she said, "Please  please don't do that," and Rogers stopped.
*239 Later in the drive, Daniel said Hastings slowed the car down, turned into a convenience store parking lot, and turned around. Rogers then told Hastings to take the next right, but Hastings drove by the street. Rogers told him to take the next right turn or he would pull the trigger. Hastings did not turn. Daniel said she turned around and saw that Hastings had pinned Rogers against the back of the seat. Daniel testified that Hastings told her to get out of the car and run. She heard a horn, then a gunshot as she fled.
She ran to a nearby apartment, where two women opened the door and let her use the phone to call police. Sheriff's deputies tracked footprints and found Rogers underneath a tree. Rogers had a gun in his pocket with two live rounds and one spent round. Daniel identified Rogers as the man who had been riding in her car.
Witnesses found Hastings slumped over the steering wheel. He had been shot once in the head from a distance of at least twelve to fifteen inches. He died in the hospital on the night of April 3, 1989.
Rogers testified that he drank during the day of April 2, then went to the club. He got a ride home to pick up a car he had recently purchased for $100, but when he returned to the club, the engine cut out and the car would not start. Rogers said he worked on the car, then asked Daniel and Hastings for a flashlight. They did not have one, and he still could not start his car. He decided to leave the car, but took a gun from the glove compartment so he would not have to leave the weapon with his vehicle.
Rogers testified that he offered Hastings cocaine in exchange for a ride home, and Hastings later became angry because he did not have the cocaine. He denied touching Daniel's breast during the ride. When Hastings refused to make a right turn, Rogers told him, "[L]ook I've got a gun, let me out of this damn car." Hastings did not appear to believe Rogers, so Rogers said he tapped him on the shoulder with the weapon. Rogers said he pulled the gun because he was scared. Hastings began to slow down, but did not stop the car completely. Rogers said he tried to get out of the car, but Hastings turned around and grabbed his hand. He pinned Rogers, and the two struggled with the gun. Rogers pushed Hastings away, and the gun fired. He testified that "I felt I was fighting for my life and the  the gun went off accidentally."
Rogers raises twenty-eight issues on this direct appeal.[1] Because we reverse Rogers' *240 first-degree murder conviction, the penalty-phase issues are rendered moot and we discuss only the guilt-phase issues.
When Daniel ran from the car, she went immediately to a nearby apartment. She banged on the door, and the two women who lived there let her use the phone to call police. One of the women, Laura Dunne, was allowed to testify to statements Daniel made after she placed the telephone call. Those statements described the events at the club and in the car. Rogers contends that it was error to admit this testimony because it was hearsay and not admissible as an excited utterance. We disagree.
An excited utterance is defined as "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." § 90.803(2), Fla. Stat. (1989). An excited utterance is admissible as an exception to the hearsay rule because the declarant does not have the reflective capacity necessary for conscious misrepresentation. Thus, statements made by someone who is excited are spontaneous and have sufficient guarantees of truthfulness. See Charles W. Ehrhardt, Florida Evidence § 803.2 (1994 ed.).
A statement qualifies for admission as an excited utterance when (1) there is an event startling enough to cause nervous excitement; (2) the statement was made before there was time for reflection; and (3) the statement was made while the person was under the stress of the excitement from the startling event. State v. Jano, 524 So.2d 660, 661 (Fla. 1988).
That a startling event occurred here is beyond question. The real questions are whether Daniel had time for reflection and whether she made her statement while still excited from the startling event.
The test regarding the time elapsed is not a bright-line rule of hours or minutes. Instead, "`where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.'" Id. at 662 (quoting Edward W. Cleary, McCormick on Evidence § 297 at 856 (3d ed. 1984)).
Dunne estimated that approximately eight to ten minutes passed between the time Daniel came to her door and the police cars arrived. Although there conceivably was time for Daniel to engage in reflective thought, the record indicates that Daniel did not engage in any reflection. Dunne testified that Daniel was hysterical when she arrived at her apartment. After Daniel called the police, she collapsed. Dunne and her roommate helped Daniel up, gave her a soda, and asked what happened. Dunne said that Daniel paced and remained very excited as she recounted the events. At no point, Dunne said, did Daniel ever appear relaxed or calm as she recounted the evening's events.
Daniel made her statements while she was still under the effects of the evening's events. Thus, her statements to Dunne qualify for admission as an exception to the hearsay rule. Compare Hamilton v. State, 547 So.2d 630, 633 (Fla. 1989) (statement not admissible under the excited utterance exception where declarant had two and one-half hours at a shooting scene to overhear deputies, investigators, and others).
Rogers also contends that the trial court erred in denying his motions for judgment of acquittal on charges of attempted sexual battery, kidnapping, and premeditated murder. We agree.
Daniel testified that as she and Hastings drove with Rogers, Rogers ordered her to take off her clothes. When she refused, Rogers asked Hastings to make her take off *241 her clothes. Hastings said he could not do that. According to Daniel's testimony, Rogers then squeezed her left breast. He stopped when she said, "Please  please don't do that," and made no further attempts to touch her. Rogers denied ordering Daniel to undress or touching her.
A trial judge should not grant a motion for judgment of acquittal unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law." Taylor v. State, 583 So.2d 323, 328 (Fla. 1991); see also Lynch v. State, 293 So.2d 44, 45-46 (1974). In this case, the facts do not support a conviction of attempted sexual battery  even assuming that Daniel's testimony is true.
Our statute defines sexual battery as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." § 794.011(1)(h), Fla. Stat. (1989). To establish attempt, the State must prove a specific intent to commit a particular crime and an overt act toward the commission of that crime. Thomas v. State, 531 So.2d 708, 710 (Fla. 1988). The State has failed to meet its burden.
While Rogers may have touched Daniel's breast and ordered her to remove her clothes, these acts do not rise to the level of an overt act toward the commission of a sexual battery. In addition, once Daniel refused Rogers' advances and orders, Rogers left her alone. Thus, we reverse Rogers' conviction of attempted sexual battery.
We also find that the trial judge erred in denying Rogers' motions for judgment of acquittal for kidnapping and premeditated murder because there is insufficient evidence to support those crimes.
The relevant statute defines "kidnapping" as "forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority." § 787.01(1)(a), Fla. Stat. (1989). The evidence introduced to support kidnapping was that Rogers pulled a gun on Hastings and Daniel and ordered them to drive the car down a road to the right. Daniel testified that Hastings refused and drove in a different direction. This evidence does not support Rogers' kidnapping conviction.
In addition, the State did not present sufficient evidence to support premeditated murder. We have defined premeditation as
more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.
Wilson v. State, 493 So.2d 1019, 1021 (Fla. 1986). Although the evidence shows that Rogers took his gun from the car when he asked Daniel and Hastings for a ride, the circumstances of Hastings' fatal shooting do not support premeditation. The testimony reflected that Hastings grabbed Rogers' gun, the two men struggled over the gun, and the gun fired. This is not sufficient to prove that Rogers had, upon reflection and deliberation, formed a conscious purpose to kill Hastings. Without sufficient evidence to support premeditated murder or felony murder, we must reverse Rogers' conviction of first-degree murder. We do find, however, that the evidence supports a conviction of second-degree murder.
We find no error in any of Rogers' remaining guilt-phase issues.[2]
Accordingly, we reverse Rogers' convictions for attempted sexual battery and kidnapping. *242 We also reverse his conviction for first-degree murder and remand for reduction of that conviction to second-degree murder and for resentencing in connection with that conviction.
It is so ordered.
OVERTON, SHAW, HARDING and WELLS, JJ., and McDONALD, Senior Justice, concur.
KOGAN, J., concurs in result only.
GRIMES, C.J., dissents with an opinion.
GRIMES, Chief Justice, dissenting.
According to Rene Daniel, Rogers pointed a gun at Hastings and threatened to shoot him if he failed to take the next right turn. When they began to struggle over possession of the gun, Rogers fired the fatal shot. Under these circumstances, I believe the jury could convict Rogers of premeditated first-degree murder.
In addition, the facts would also justify the conclusion that Rogers committed either a kidnapping or an attempted kidnapping. In either event, this would provide the underlying felony which would support a conviction of first-degree felony murder.
I respectfully dissent.
NOTES
[1] Whether (1) the trial court erred in permitting the State to bolster its case by commenting on matters unsupported by evidence at trial; (2) the trial court erred by permitting the State to introduce the hearsay narrative statements of Rene Daniel, which were used improperly to bolster her trial testimony; (3) the trial court erred in overruling Rogers' objection to playing an audiotape of Daniel's testimony; (4) the trial court erred in denying Rogers' request for the standard jury instruction on prior threats; (5) the trial court erred in forcing Rogers to present evidence of his silence at the arrest scene; (6) the trial court erred in denying Rogers' motions for judgment of acquittal for attempted sexual battery, kidnapping, and murder; (7) it was reversible error for the trial court to make comments indicating that the State had additional evidence and witnesses beyond what was produced in court; (8) the trial court erred in precluding Rogers from proffering testimony to a line of questioning and in precluding Rogers from presenting legal argument on this issue; (9) Rogers was denied due process and a fair trial by prosecutorial misconduct during the trial; (10) the trial court erred in permitting the State to present evidence that Mark Hastings had a reputation for peacefulness; (11) the trial court erred in not allowing Rogers to present evidence that Hastings had a reputation for using drugs; (12) the trial court erred in excluding a defense witness during the penalty phase and in prohibiting Rogers from proffering the witness's testimony; (13) the trial court erred in admitting evidence for which Rogers was acquitted; (14) the trial court erred in permitting the State to introduce testimony regarding torn and disheveled panties that were not relevant; (15) the trial court erred in failing to find nonstatutory mitigating circumstances; (16) the trial court erred in failing to consider nonstatutory mitigating circumstances in its sentencing order; (17) the trial court erred in denying Rogers' special requested limiting instruction on the consideration of duplicate aggravating circumstances; (18) the jury was improperly led to believe that it had no responsibility for the sentence Rogers would receive; (19) the trial court erred in prohibiting Rogers from hearsay evidence during the penalty phase; (20) the trial court erred in overruling Rogers' objection to the jury instructions on mitigating circumstances requiring "extreme" mental or emotional disturbance and "substantial" impairment; (21) the trial court erred by instructing the jury that it could find the killing was cold, calculated, and premeditated; (22) the death penalty is proportionately warranted; (23) the trial court erred in failing to adequately define nonstatutory mitigating circumstances; (24) the trial court erred in finding the aggravating circumstance that Rogers was under a sentence of imprisonment; (25) the trial court erred in failing to instruct the jury on the correct burden of proof in the penalty phase; (26) Florida's death penalty statute is unconstitutional; (27) the aggravating circumstances used in this case atutional; and (28) the trial court erred in departing from the recommended guidelines range.
[2] We find no merit to Issue 1. The jury was well aware that Daniel had made additional statements to detectives because the defense attorney opened the door to questioning about those statements. There was already testimony that Daniel had previously given consistent statements, so any mention of additional cumulative statements was cumulative. State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1985). Issues 3, 4, 5, 8, 10, and 11 also are without merit.

We find that Issue 7 has not been preserved for our review because Rogers failed to make a contemporaneous objection at trial and there is no allegation of fundamental error. Herzog v. State, 439 So.2d 1372, 1376 (Fla. 1983).
In Issue 9, Rogers claims error because of several instances of prosecutorial misconduct. These either are not preserved for our review, are without merit, or are harmless error.