BROWNING, J.
Appellant appeals his conviction for first-degree premeditated murder on two grounds. First, he argues the trial court should have granted his motion for judgment of acquittal because the evidence was insufficient to prove premeditation. Second, he argues the trial court’s admission of hearsay testimony, consisting of an alleged excited utterance made by the State’s chief witness to a police officer, was harmful error. We affirm on the first ground but agree on the second ground and reverse for a new trial
The victim was found on Friday afternoon, June 20, 1997, killed by four contact to near-contact gunshot wounds to his *643 head and chest. There were no eyewitnesses to the murder, no fingerprints or other physical evidence linking Appellant to the murder, no indication that Appellant and the victim knew each other, no ascertained motive, and no evidence of premeditation other than the four gunshot wounds, their location on the victim’s body, and the position of the victim’s body in the vehicle when shot. Although Appellant’s semi-automatic rifle was determined to be the murder weapon, the rifle was secured from the possession of Gene Terrill (Terrill), Appellant’s uncle.
Terrill’s testimony provided the only evidence that Appellant committed the murder. Terrill testified that Appellant and his wife came to Terrill’s home early on a Friday morning,[1] and Appellant “started talking about someone he had killed,” removed the rifle from his car, and asked Terrill to “watch out for it.” However, State witness Phillip Ashby, Terrill’s stepson, testified that Terrill told him B.J. Redden delivered the weapon, and Appellant was with him. Terrill also testified that he first learned of the murder when Appellant “confessed” to the murder to him over the telephone. Significantly, Terrill himself confessed three times to the murder, but recanted each time, stating he was in a “drunk stupor” each time he confessed, and he confessed only because he “felt sorry” for Appellant’s children. Finally, Terrill testified that he called Sergeant Barnes (Barnes) on Saturday morning because Appellant admitted he had killed someone, Terrill believed the rifle was involved, and Terrill did not want anything to do with it. Barnes “made arrangements” and later came to Terrill’s home to discuss the matter.
Conversely, Barnes testified that he spoke with Terrill on the telephone at approximately 8:30 P.M., on June 21, 1997. Terrill asked Barnes to come to Terrill’s home in an unmarked car because he was scared and did not want Appellant to see a police car at his home. When Barnes arrived shortly after 8:30 P.M., Terrill seemed extremely nervous and was shaking. Terrill stated he hid the murder weapon for Appellant and wanted it out of his house. Terrill had seen a story about the murder on the 6:00 P.M. news, and shortly after the news, Appellant called and said that he was coming to get his gun and that “some people run their mouths too much.” Terrill was afraid he would be harmed. The trial court ruled the phone call from Appellant was a startling event and Terrill’s statement to Barnes was admissible as an excited utterance. In so doing, the trial court reversibly erred.
“A statement qualifies for admission as an excited utterance when (1) there is an event startling enough to cause nervous excitement; (2) the statement was made before there was time for reflection; and (3) the statement was made while the person was under the stress of the excitement from the startling event.” Rogers v. State, 660 So.2d 237, 240 (Fla.1995). “A statement as to what occurred does not become admissible merely because the victim is still in an excited state.” Charlot v. State, 679 So.2d 844, 845 (Fla. 4th DCA 1996). “The test regarding the time elapsed is not a bright-line rule of hours or minutes.” Rogers, 660 So.2d at 240. If “the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.” Id., quoting State v. Jano, 524 So.2d 660, 662 (Fla.1988).
*644 Here, the only testimony relating to Terrill’s level of excitement and opportunity for reflection came from Barnes, not Terrill. Depending upon whose testimony one believes, Terrill had from 2 to 20 hours from the time he received the alleged phone call from Appellant to the time he talked to Barnes. Although there is no “bright-line rule of hours or minutes,” 2 hours is sufficient to permit reflective thought, and there was no evidence that Terrill did not, in fact, engage in reflective thought. See Charlot, 679 So.2d at 845 (attempted rape victim’s statements to police were not excited utterances because, although the officer arrived within 10 minutes of the attempted rape, he was unable to say how long the victim’s statements to him continued during the 2 hours he was with her); Hamilton v. State, 547 So.2d 630, 633 (Fla.1989) (statement not admissible as excited utterance where declarant had 2íé hours at a shooting scene to overhear deputies, investigators, and others); Preston v. State, 470 So.2d 836 (Fla. 2d DCA 1985) (statements made by rape victim to investigating officer between 1 and 2 hours after sexual attack inadmissible as excited utterance).
The trial court’s error in admitting Barnes’ testimony is not harmless. Ter-rill’s testimony is the only evidence that Appellant committed the murder and possessed the murder weapon immediately after the homicide. The evidence indicates Terrill is an elderly man in extremely poor health. Ashby’s testimony that B.J. Redden, accompanied by Appellant, brought the murder weapon to Terrill’s home contradicted Terrill’s testimony that Appellant and his wife brought the murder weapon to Terrill’s home. Barnes’ testimony im-permissibly rehabilitated Terrill’s testimony after it was seriously impeached by Ashby’s testimony. Furthermore, Barnes’ testimony could cause the jury to feel sympathy for Terrill, a sick, elderly man who was allegedly threatened by Appellant, a younger man. Barnes’ testimony was not cumulative because Terrill did not testify regarding the alleged telephone call from Appellant preceding Terrill’s telephone call to Barnes.
In summary, Terrill’s statement to Barnes does not qualify as an excited utterance, and without such inadmissible hearsay the only witness providing direct testimony against Appellant was Terrill, and Barnes’ testimony rendered Terrill’s testimony credible and tended to rehabilitate Terrill’s testimony after it was impeached by Ashby. Accordingly, we find the admission of Barnes’ hearsay testimony highly prejudicial. Thus, it cannot be said beyond a reasonable doubt that the error did not contribute to Appellant’s conviction. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Accordingly, we REVERSE and REMAND for a new trial.
BOOTH and BENTON, JJ., CONCUR.

. The record does not reflect the date this occurred.