890 So.2d 267 (2004)
Mary L. BLANDENBURG, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-1221.
District Court of Appeal of Florida, First District.
November 5, 2004.
Rehearing Denied January 12, 2005.
*268 Nancy A. Daniels, Public Defender, and Archie F. Gardner, Jr., Assistant Public Defender, Tallahassee, for Appellant.
Charles J. Crist, Jr., Attorney General, and Bryan Jordan, Assistant Attorney General, Tallahassee, for Appellee.
KAHN, J.
Appellant, Mary L. Blandenburg, challenges the trial court's revocation of her probation based upon allegations that she violated the law by committing aggravated battery upon her son. Because our review of the record indicates that the trial court based its revocation solely upon inadmissible hearsay statements, we reverse. See Barnes v. State, 739 So.2d 1181, 1182 (Fla. 1st DCA 1999).
On October 26, 2002, appellant allegedly stabbed her son, Frederick, with a steak knife below his left eye. After the incident, Frederick left the house and went to a neighbor's house to obtain a ride to the hospital. Marianna Police Officer Poole was dispatched to the hospital to investigate the incident. Poole testified that he spoke with Frederick 15 to 20 minutes after the incident. After speaking with Frederick, Officer Poole went to appellant's house where he encountered Christina, appellant's daughter. According to Poole, the interview with Christina occurred about an hour after his meeting with Frederick.
Christina did not testify at the revocation hearing. Frederick testified to the following:
I don't remember my momma hitting me [or] trying to stab me, I don't remember that but she had [a knife] in her hand. I don't know if I stumbled into it but it left a cut under my eye and they asked me how it happened. I told them it was a mistake because I was drinking and, you know, I must have run up on her. I don't know if she was trying to defend herself like she had her hand up and I ran into her drunk. That's all I remember. She didn't do it intentional [sic].
As a consequence, the State relied primarily upon Officer Poole's testimony relating to statements made by Frederick and Christina after the incident to prove that appellant had intentionally stabbed Frederick. Recognizing these statements were hearsay, the State sought their admission under the excited utterance exception to the hearsay rule.
*269 Section 90.803(2), Florida Statutes (2002), provides for the admission of an available declarant's out-of-court "statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The admissibility of an excited utterance is premised on the notion that in such circumstances "the declarant does not have the reflective capacity necessary for conscious misrepresentation." Rogers v. State, 660 So.2d 237, 240 (Fla.1995). A statement must satisfy three "essential elements" to be admissible under the excited utterance exception. State v. Jano, 524 So.2d 660, 661 (Fla.1988). The supreme court has enumerated the elements: "(1) there must be an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must be made while the person is under the stress of excitement caused by the event." Id. In this case, the State failed to establish that Frederick's or Christina's statements meet the test.
With regard to Frederick's out-of-court statements, the State attempted to lay the predicate for the excited utterance exception with the following exchange:
Q. [by Assistant State Attorney] When did you go to the hospital?
A. [by Officer Poole] After I was dispatched. Q. Were you able to make a determination, and [if] you need to refer to your report that's fine, how long after the incident did you respond to the hospital and speak to Mr. Blandenburg?
A. Right away, sir.
Q. And when you got there at the hospital how was Mr. Blandenburg?
A. He was crying, he was upset, he was in pain. They hadn't stitched him up yet and he was awaiting [sic] to be x-rayed as well.
At this point, the State indicated that it wished to introduce statements made by Frederick to Poole "under excited utterance." The trial court then asked the State to lay a further predicate as to the "timing of the statement." After the State elicited testimony from Poole indicating that he arrived at the hospital "anywhere from 15 to 20 minutes after the incident," the trial court allowed the testimony. According to Poole, Frederick told him that he and appellant "got into an altercation and Mom grabbed a steak knife and cut him under the eye." A "tussle" ensued and Christina secured the knife and threw it into the backyard. Poole further recounted that Frederick told him that he went to a neighbor's home seeking a ride to the hospital and appellant fled the scene.
The State then proceeded to introduce evidence of statements made by Christina to Officer Poole. Poole testified that he spoke to Christina at the Blandenburg home about an hour after speaking with Frederick. According to Poole, Christina was "upset, agitated that we had come back to the apartment and, you know, just didn't want to be bothered type of attitude." The trial court found this testimony insufficient and required the State to lay a further predicate. Poole then testified that Christina was "restless" and "couldn't look me eye to eye," was "yelling" and stating "`I don't want to be involved, I don't want to do this.'" According to Poole, Christina was excited or upset about the incident and about the prospect of her mother getting into trouble. Based upon this predicate, the trial court found "the statements were made in a sufficient time in relation to the altercation and they are reliable."
*270 Without question, the timing of a statement is an important consideration in determining whether a statement is admissible under the excited utterance exception. See Jano, 524 So.2d at 663. Nevertheless, no bright-line rule exists for determining whether too much time has passed for the exception to apply. See Rogers, 660 So.2d at 240; Corn v. State, 796 So.2d 641, 644 (Fla. 1st DCA 2001). Indeed, courts have found the exception applicable to statements made well after the occurrence of the startling events to which the statements relate. The common thread running through those cases, however, is that at the time of the statement, the declarants were either "hysterical," severely injured, or subject to some other extreme emotional state sufficient to prevent reflective thought. See, e.g., Rogers, 660 So.2d at 240 (upholding the admissibility of statements where the declarant was hysterical when police arrived at scene of the crime eight to ten minutes after the incident); Nat'l Union Fire Ins. Co. v. Blackmon, 754 So.2d 840, 843 (Fla. 1st DCA 2000) (upholding the admissibility of statements made by a declarant in an emergency room one hour after his accident where the declarant ultimately died from his injuries); Rivera v. State, 718 So.2d 856, 858 (Fla. 4th DCA 1998) (upholding the admissibility of statements made at the scene of the crime fifteen minutes after the incident where the declarant was "crying hysterically, shaking uncontrollably, and telling [the police officer] to keep the appellant away from her"); Edmond v. State, 559 So.2d 85, 86 (Fla. 3d DCA 1990) (upholding the admissibility of "an emotional description of the assailant" given by a "frightened" eleven-year-old boy two to three hours after the incident where "the child was excited, perhaps even hysterical, at the time his statements were made"). On the other hand, "`A statement as to what occurred does not become admissible merely because the victim is still in an excited state.'" Corn, 796 So.2d at 643 (quoting Charlot v. State, 679 So.2d 844, 845 (Fla. 4th DCA 1996)). After reviewing the record in this case, we conclude that the State went no further than showing that both Frederick and Christina were excited when they spoke with Officer Poole.
As noted above, excited utterances are admissible because the circumstances under which such statements are made provide certain guarantees against "conscious misrepresentation." Rogers, 660 So.2d at 240. As the interval of time between the startling event and the statement increases, so too does the opportunity for the declarant to engage in reflective thought. See Jano, 524 So.2d at 662. In Jano, the Florida Supreme Court addressed the passage of time in the excited utterance context:
If the statement occurs while the exciting event is still in progress, courts have little difficulty finding that the excitement prompted the statement. But as the time between the event and the statement increases, so does the reluctance to find the statement an excited utterance. Although one court has held a statement made fourteen hours after a physical beating to be the product of the excitement caused by the beating, other courts have held statements made within minutes of the event not admissible. Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.

Id. (quoting E. Cleary, McCormick on Evidence § 297 at 856 (3d ed.1984) (emphasis added)). The courts of this state have *271 since adopted Professor McCormick's "rule of thumb" requiring that the proponent of an excited utterance made well after the startling event offer some proof that the declarant did not engage in a reflective thought process. See, e.g., Stoll v. State, 762 So.2d 870, 873 (Fla.2000); Montano v. State, 846 So.2d 677, 683 (Fla. 4th DCA 2003); Corn, 796 So.2d at 643; Sunn v. Colonial Penn Ins. Co., 556 So.2d 1156, 1158 (Fla. 3d DCA 1990). The record in this case clearly indicates that both Frederick and Christina had the opportunity to engage in reflective thought. The opportunity for reflective thought negates elements (2) and (3) of the Jano test.
After the incident, Frederick left the house, walked to a neighbor's house, and asked for a ride to the hospital. Frederick arrived at the hospital and apparently received some initial care for his injury, as evidenced by the fact that he was waiting on an x-ray. He gave Poole a detailed account of the incident and its aftermath, including a description of Christina throwing the knife into the backyard. Frederick also stated, in a patently rational manner, that he did not want charges pressed against his mother.
Officer Poole testified that he spoke to Christina about an hour after meeting with Frederick. He said that Christina "was upset, agitated that we had come back to the apartment and, you know, just didn't want to be bothered type attitude." Christina was yelling at Poole that she did not want to be involved. In response to the prosecutor's leading question, Poole stated that Christina was upset about the incident. Poole, however, said that Christina was more concerned about the prospects of her mother going to jail than with Frederick's injury. Poole's testimony suggested that Christina was reluctant to speak to him because of the potential consequences of her statements. As with any hearsay statement, Christina's declarations may have been true. Nevertheless, the fact that she considered those consequences counters any assertion that her statements were made before she had time to reflect. The testimony cited by the dissent, at best, establishes that both Frederick and Christina were excited. Moreover, the trial court could not have considered Frederick's recantation, as suggested by the dissent, as evidence that Frederick did not engage in reflective thought because Frederick testified after Officer Poole. Given the passage of time, the actions taken by Frederick and Christina in the interim, and the trial court's failure to make a finding on this point, admission of the unsworn statements was an abuse of discretion.
We are not willing to craft some facile rule that would allow the excited utterance exception to overwhelm the basic rule of inadmissibility for hearsay statements. Unlike the federal rules, the Florida Evidence Code contains no "residual" exception for statements that the trial court finds are reliable. See Fed.R.Evid. 807; R.U. v. Dep't of Children & Families, 782 So.2d 1024, 1025 (Fla. 4th DCA 2001) (citing Charles W. Ehrhardt, Florida Evidence § 802.1 (1999 ed.), for the proposition that Florida's refusal to adopt a "`catch-all' exception to the hearsay rule" is consistent with "`one of the chief reasons for the adoption of a code of evidence [which] was to lend certainty and predictability to the law of evidence'"). In applying the excited utterance exception, as with other hearsay exceptions, a trial court must be mindful that the Confrontation Clause of the Constitution guarantees criminal defendants an opportunity to confront and cross-examine witnesses against them. Characterizing the excited utterance exception, the United States Supreme Court has observed:

*272 The basis for the "excited utterance" exception ... is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statements provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous.
Idaho v. Wright, 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Reviewing this record as a whole, and particularly the evidence of guilt against appellant, we are unable to say that cross-examination of Frederick or Christina would have been superfluous. Many elements, other than the events involving the alleged knife attack, are at play in this record. Specifically, we would note Frederick's intoxication at the time of the event and Christina's general state of agitation at having the police involved in any investigation of her family. Moreover, we note that the statements relied upon by the State were clearly not spontaneous and were made, in each instance, by persons responding to questioning in the course of a police investigation.
The trial court erred in admitting the hearsay statements. We REVERSE because the "remaining non-hearsay evidence failed to prove [appellant's] violation by the greater weight of the evidence." Vezina v. State, 644 So.2d 602, 604 (Fla. 1st DCA 1994).
BARFIELD, J., concurs.
HAWKES, J., dissents with opinion.
HAWKES, J., Dissenting.
I am compelled to decline the majority's invitation to revisit the trial court's factual findings. The trial court had competent, substantial evidence from which it could find both declarants had the necessary excited state of mind, and that they did not reflect to contrive their statements. This meets the statutory criteria of an excited utterance. Thus, the trial court did not abuse its discretion and should be affirmed.
Whether the necessary state of mind is present for a court to admit a statement as an "excited utterance" is a preliminary fact for the trial court's determination. See Bell v. State, 847 So.2d 558, 561 (Fla. 3d DCA 2003); State v. Jano, 524 So.2d 660 (Fla.1988). A trial court's ruling on the admissibility of a statement as an excited utterance is reviewed for an abuse of discretion. See Harmon v. State, 854 So.2d 697 (Fla. 5th DCA 2003). In determining whether the trial court abused its discretion, an appellate court must look at what evidence the trial court had available when it made its ruling. See id. at 700.
The majority re-weighs the testimony to conclude the trial court abused its discretion by admitting the statements of both Frederick and Christina. As grounds, the majority finds the State showed only that Frederick and Christina were excited when they spoke with Poole, and both clearly had time to engage in reflective thought, given the action taken by Frederick and Christina "during the interim." The majority reasons that, because the opportunity for reflective thought exists, the inquiry ends. Based on this reasoning, the majority opines it is unwilling "to craft some facile rule that would allow the excited utterance exception to overwhelm the basic rule of inadmissibility for hearsay statements." Op. at 271. By implication, the majority expresses concern that following the dissent's reasoning would somehow result in the creation of an inappropriate rule.
However, the majority overlooks the fact a satisfactory and easily applicable rule already exists, and is contained within *273 the very cases cited by the majority. See Jano, 524 So.2d at 662; Rogers v. State, 660 So.2d 237 (Fla.1995). That rule requires further inquiry where there has been time for reflective thought. See Jano, 524 So.2d at 662; Rogers, 660 So.2d at 240. Because almost any length of time is enough to permit reflective thought, a statement will qualify as an excited utterance and be admissible, if the trial court finds "some proof that the declarant did not in fact engage in a reflective thought process." Jano, 524 So.2d at 662 (emphasis added); Rogers, 660 So.2d at 240; Corn, 796 So.2d 641, 643 (Fla. 1st DCA 2001).
The majority fails to take this next step in the analysis. Here, since there was time for reflective thought, contrary to the majority's assertion, our inquiry does not end. Instead, it extends to the next step. That step is to determine whether the trial court had evidence or "some proof" that would support its conclusion that Frederick and Christina did not engage in reflective thought prior to making the statements that incriminated their mother.
The evidence before the trial court was that Frederick suffered a stab wound to the face, which is clearly a startling event. His statement that his mother stabbed him was made in the emergency room, approximately 15-20 minutes after being stabbed, before his wound was stitched. Testimony has him crying, upset cand in pain.
Frederick was clearly still under the stress of the event. Upon questioning at that time, Frederick stated he and Appellant (his mother) were arguing in the living room, Appellant went into the kitchen, got a knife, returned and stabbed him. Almost immediately after making these statements, Frederick stated he did not want to press charges against his mother. Subsequently, at Appellant's violation of probation hearing, Frederick testified Appellant did not intentionally stab him. Instead, Appellant was holding the knife and Frederick ran into it while he was drunk. Appellant insisted it was his fault and he must have stumbled into Appellant.
Based on the evidence before the court, (i.e., Frederick's initial statement to police incriminating his mother, followed by his expressed desire not to press charges against his mother, and his later testimony exonerating his mother), the trial court could reasonably conclude Frederick's initial statement was an excited utterance made without reflecting upon the consequences of his statement. Evidence of reflection came when Frederick learned his mother would go to prison and he contrived a way to help her by dramatically revising his recitation of the events leading up to his being stabbed. These facts clearly provide "some proof" that Frederick did not engage in reflective thought prior to making his initial statement at the hospital.
Christina's first statement to Poole was that Appellant cut Frederick during an argument. The evidence supports a conclusion that this statement was made without reflective thought. Seeing your mother stab your brother under his eye would normally be considered a startling event. As the majority concedes, Christina was still excited when she spoke with Poole. Her statement was given while she was still "under the stress of excitement caused by the event" as evidenced by her yelling in response to Poole's questions, that her mother had left, she did not want to be involved, she didn't "want to do this thing," and "they shouldn't have been fighting."
Christina's excitement, yelling, and her initial statements incriminating her mother provide "some evidence" from which the trial court could reasonably conclude Christina's initial statement that Appellant stabbed Frederick was made without reflecting *274 and contriving on her subsequent strategy of refusing to testify, to prevent her mother from going to prison.
Based on this evidence, I cannot conclude the trial court abused its discretion by determining both Frederick and Christina made statements, without reflection or contrivance, relating to a startling event while under the stress of excitement caused by the event. The trial court should be affirmed.