679 So.2d 710 (1996)
Horace Melvin POPE, Appellant,
v.
STATE of Florida, Appellee.
No. 81797.
Supreme Court of Florida.
June 13, 1996.
Rehearing Denied September 5, 1996.
*712 Wendy E. Friedberg of Aidif & Friedberg, Orlando, for Appellant.
Robert A. Butterworth, Attorney General and Carol M. Dittmar, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
We have on appeal the judgment of conviction and sentence of death imposed on Horace Melvin Pope. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
After midnight on February 17, 1992, Alice Mahaffey told police officer Ronald Wright, paramedic Venetia Giger, and neighbor William Tice, that Horace Pope had beaten her, stabbed her, and kicked her in the head repeatedly with his cowboy boots. She added that he took her car keys, left her for dead, and drove away in her car with his eighteen-year-old niece Marsha Pope. After Pope and Marsha left, Alice managed to drag herself across the street to William Tice's residence where she lay slumped on his sofa, covered in blood until the police and paramedics arrived. She died in the hospital eight days after surgery for her wounds and an ensuing infection.
Marsha was an eyewitness to the attack by Pope which she described as follows: She was alone in her parents' home on February 16, 1992, when Pope and Alice, both alcoholics, arrived in Alice's car. Both had been drinking and while Alice was placing beer in the kitchen, Pope and Marsha were left alone in the living room. Pope, at this time, told Marsha that he was going to kill Alice for her car and money. Thinking Pope was drunk and not to be taken seriously, Marsha retired to her bedroom, leaving Pope and Alice in her parents' bedroom.
Later, Pope summoned Marsha and forced her to watch him beat, kick, and stab Alice. Marsha witnessed Pope beat Alice's head against the sink and wall while Alice was sitting on the toilet after which he pushed her off the toilet and stomped on her head and back with his boots. While Alice was lying face down on the floor, Pope straddled and stabbed her. When Marsha tried to escape, Pope threatened to kill her if she attempted to leave. Pope then left Alice lying on the bathroom floor and went to the kitchen to wash his hands, after telling Marsha to see if Alice was dead. In order to prevent Pope from inflicting further violence, Marsha confirmed that Alice was dead. Marsha then left with Pope in Alice's car. After being threatened again with death, Marsha persuaded Pope to drop her off at a friend's house at which time she immediately called 911. After dropping Marsha off, Pope drove to the trailer where his brother's family was staying and attempted to borrow money. Upon being refused, he made the following statement: "Well, I've killed a woman in your house and your bathroom's in a mess." Pope then drove away in Alice's car and was apprehended by the police at which time he made two spontaneous statements. He said calmly, "I hope I killed the bitch" and, as the officers were discussing Alice's condition, Pope said loudly, "I hope I didn't go through all that for nothing. I hope she's dead as a doornail."
Pope was found guilty of first-degree murder and robbery and acquitted of kidnapping. The court found two aggravating circumstances, two statutory mitigating circumstances, and three nonstatutory mitigating circumstances.[1] Pope was sentenced to *713 death for the homicide and to a consecutive life term for robbery with a deadly weapon. He raises nine issues on appeal.[2]
First, we address Pope's contention that the trial court erred by permitting William Tice and Officer Ronald Wright to testify regarding Alice's statements to them. We conclude that the trial judge did not err in admitting the statements as excited utterances. We reiterate the following essential elements from our decision in State v. Jano, 524 So.2d 660, 661 (Fla.1988). To fall within the excited utterance exception to the hearsay rule as set forth in section 90.803(2), Florida Statutes (1993), there must be an event startling enough to cause nervous excitement; the statement must be made before there is time to contrive or misrepresent; and the statement must be made while the person is under the stress of excitement caused by the event. Alice made her statements to Tice within a minute after she saw him. She was lying on his couch covered in blood, slurring her speech, moaning, and having trouble breathing. Tice called the police immediately and they arrived within the next two to three minutes. Before the paramedics arrived ten to fifteen minutes later, Officer Wright interviewed Alice. During this brief interview, Alice made a statement to Wright which we also find to be an excited utterance. In both cases, Alice's statements were made while she was under the stress of excitement caused by the attack. The circumstances belie the suggestion that she had time to contrive or misrepresent. Her statements merely identified Pope as her attacker and described the attack.
Pope argues that the court erred in permitting the emergency medical technician, Venetia Giger, to testify relative to the statements Alice made in her presence. The court admitted these statements as dying declarations. Mary Witcher, the paramedic with Giger at the time Alice made the statements, heard Alice repeat "I'm going to die" at least two dozen times.
Statements made concerning the cause or circumstances of what the declarant believes to be his or her impending death are admissible as hearsay exceptions. § 90.804(2)(b), Fla. Stat. (1993). Although it is not required that the declarant make express utterances that she knew she was going to die, the court should satisfy itself "that the deceased knew and appreciated [her] condition as being that of an approach to certain and immediate death." Henry v. State, 613 So.2d 429, 431 (Fla.1992). The trial court's determination that the predicate for the dying declaration was sufficient should not be disturbed unless clearly erroneous, and Pope has not demonstrated error. See id. We find that the court's admission of the statements as dying declarations was reasonable based on the totality of the circumstances.
Pope next asserts that the trial court erred by admitting inflammatory photographs of the bloody bathroom where the stabbing occurred, autopsy photographs, and the victim's bloody clothes. We disagree. The test for admissibility of photographic evidence is relevancy rather than necessity. Nixon v. State, 572 So.2d 1336, 1342 (Fla. 1990), cert. denied, 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 128, 116 L.Ed.2d 128 (1991). The photographs of the bathroom and the clothes were relevant to establish the manner in which the murder was committed and to assist the crime scene technician in explaining the condition of the crime scene when the police arrived. The autopsy photographs *714 were relevant to illustrate the medical examiner's testimony and the injuries he noted on Alice. Relevant evidence which is not so shocking as to outweigh its probative value is admissible. Having viewed the photographs, we cannot say the trial judge abused her discretion. See Jones v. State, 648 So.2d 669, 679 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995).
As his third issue, Pope maintains that the trial court should not have admitted evidence that several months prior to the murder, Pope battered Alice.[3] We agree that evidence of the battery should not have been admitted, but we conclude that the error was harmless. The state's theory was that Pope killed Alice shortly after his release from jail because he blamed her for his incarceration resulting from the battery. Originally, the court ruled that the battery and arrest were admissible under section 90.404(2), Florida Statutes (1993),[4] to prove motive and premeditation. The judge reversed her ruling and admitted evidence of the battery but not the arrest or incarceration after concluding that the additional evidence was too prejudicial. The fact that Pope battered Alice several months prior to her murder is of slight relevance when the jury is not told of the ensuing arrest and incarceration. Without knowledge of the arrest or incarceration, the prior battery does not show malice, premeditation, or that Pope's motive for killing Alice was vengeance. The isolated fact that Pope battered Alice in the past is irrelevant to the issue of her murder.
Generally, "[t]he admission of improper collateral crime evidence is `presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged,'" Peek v. State, 488 So.2d 52, 56 (Fla.1986)(quoting Straight v. State, 397 So.2d 903, 908 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981)), but the error here satisfies the harmless-error test set forth in State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). When applying a harmless-error analysis, "[t]he question is whether there is a reasonable possibility that the error affected the verdict." Id. If the reviewing court can say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmless. Id. From our review of the record, we find no reasonable possibility that the admission of the prior battery on Alice affected the verdict in either the guilt or penalty phase of the trial; thus we conclude the error was harmless.
Although Pope did not request a limiting instruction, he argues that the court committed fundamental error by failing to instruct the jury that the battery was relevant solely to prove motive. We disagree. In order to be entitled to a limiting instruction, a defendant must request such an instruction. No request was made on Pope's behalf, therefore the trial judge did not commit error.[5]
Pope asserts next that the trial court erred in refusing to instruct the jury *715 regarding third-degree murder,[6] accomplices, battery, and aggravated battery. We find no merit to this argument. The trial court properly denied the third-degree murder instruction for two reasons. First, the facts of this case do not support such an instruction. The court is not required to give requested instructions on lesser degrees of murder unless they are supported by the evidence. Herrington v. State, 538 So.2d 850, 851 (Fla. 1989). Second, third-degree murder is two steps removed from the crime for which Pope was convicted. Any error is presumed harmless because "[w]here the omitted instruction relates to an offense two or more steps removed ... reviewing courts may properly find such error harmless." State v. Abreau, 363 So.2d 1063, 1064 (Fla.1978). We find that the trial judge did not commit error, but had we found error we would find it to be harmless in this instance.
We likewise find that the court did not commit error by refusing to instruct the jury on battery and aggravated battery. A battery instruction is improper in a homicide case. "[W]here a homicide has taken place, the proper jury instructions are restricted to all degrees of murder, manslaughter, and justifiable and excusable homicide." Martin v. State, 342 So.2d 501, 503 (Fla.1977) ("Whether an aggravated assault occurred as part of a crime that culminated in the death of the victim is patently immaterial."). The exception to this rule is where there is an issue of causation, as when some unconnected cause, other than the defendant's act, may have caused the victim's death. In re Standard Jury Instructions in Criminal Cases, 543 So.2d 1205, 1233 (Fla.1989). This exception does not apply here.
We also find that the court did not commit error by denying the accomplice instruction because it did not make sense in the context of this case. Here, Marsha was not a codefendant or a willing accomplice. Pope conceded that there was no testimony suggesting that Marsha helped him willingly.
Next, we disagree with Pope's assertion that the state's comment on his right to remain silent is reversible error. During voir dire, the prosecutor asked prospective jurors the following question:
[A]ssuming someone takes the stand and they're testifying and they admit to using alcohol and maybe using a lot of alcohol, or there's testimony about someone having used alcohol, would you just sort of automatically become prejudiced towards that person to the point that you would form an opinion about their truthfulness or their guilt or anything of that nature?
We find that the state's comment was not susceptible to being construed as a comment on Pope's right to testify. The concern with use of the word "admits" is misplaced. The question related to any witness who might take the stand and admit to the consumption of alcohol and whether the juror would find that witness believable. This does not focus on this defendant and is not a comment on silence. We find this point to be without merit.
Pope next raises a compound issue. First, he asserts that the trial court erred by changing the order of the prospective jurors during the selection of alternates. The judge changed the order of the venire after defense counsel vacillated in his decision to reject juror no. 302. Pope initially rejected no. 302 when he thought no. 302 would sit as one of the twelve jurors. When he realized that no. 302 would be an alternate, he wavered several times before finally choosing him. At this point, the judge anticipated possible error if she allowed Pope to select no. 302 because he had rejected him more than once. The judge brought in a new venire and added no. 302 to the end to insure that both parties unequivocally agreed on the two alternates finally selected. At the end of the selection process, defense counsel affirmatively stated his satisfaction with both the jury and the two alternates, and he agreed to have them sworn. To show reversible error under Florida law, a defendant must show that an objectionable *716 juror had to be accepted. Trotter v. State, 576 So.2d 691, 693 (Fla.1990). We find no error.
Second, Pope claims that the judge erred by examining the verdict forms and announcing the verdict before the jury completed its deliberations in violation of rule 3.440 of the Florida Rules of Criminal Procedure. After the jurors left the courtroom for the evening, the judge collected the verdict forms and inadvertently saw that three of the forms for the kidnapping charge were not signed. She immediately disclosed her knowledge to the attorneys. We find no error. The judge's disclosure did not amount to an illegal announcement of the verdict. Pope was not entitled to a mistrial on these facts, but even if there had been error, it would be harmless in light of his acquittal on the kidnapping charge.[7]
As Pope's seventh issue, he claims that the court erred by refusing to consider the following factors as mitigating evidence: (1) that Pope did not know Alice was alive when he left the scene; (2) that Alice died from complications during recovery from the surgery required by the wounds inflicted by Pope; and (3) that persons treated for Alice's type of knife wounds generally recover. We find that the trial judge properly refused to consider these circumstances in mitigation. They do not reduce Pope's moral culpability or extenuate the circumstances of the crime.
Finally, Pope asserts that Florida's death penalty statute is unconstitutional and that his death sentence is not proportional. Pope's assertion that Florida's death penalty is unconstitutional has been rejected by this Court and the United States Supreme Court and is without merit. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). We disagree with Pope's claim that his death sentence is disproportionate because the killing was a result of a domestic dispute. Pope argues that his death sentence should be reduced to life in prison to comport with the line of cases dealing with murders arising from lovers' quarrels or domestic disputes. See Fead v. State, 512 So.2d 176 (Fla.1987); Ross v. State, 474 So.2d 1170 (Fla.1985); Blair v. State, 406 So.2d 1103 (Fla.1981). Unlike the cited cases, this record contains competent, substantial evidence to support the court's finding that this was a premeditated murder for pecuniary gain, not a heat of passion killing resulting from a lover's quarrel. We conclude that the circumstances establish that Pope's death sentence is proportional to other cases in which sentences of death have been imposed. See Whitton v. State, 649 So.2d 861 (Fla.1994); Porter v. State, 564 So.2d 1060, 1064 (Fla.1990), cert. denied, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991). Accordingly, we affirm the convictions and the sentence of death.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
KOGAN, C.J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
KOGAN, C.J., concurring in part and dissenting in part.
I concur with the majority in affirming the defendant's guilt of first-degree murder. However, I dissent as to the imposition of the death penalty and would reduce the sentence to life imprisonment based upon proportionality. Death is not proportionate here because of the substantial mental mitigation found by the trial court. Cf. Nibert v. State, 574 So.2d 1059 (Fla.1990) (death not proportionate for defendant who murdered drinking buddy after expressing intent to rob him, where murder was heinous, atrocious, or cruel and defendant had history of alcoholism, was drinking heavily at the time of the murder and was under the influence of extreme mental or emotional disturbance, and his capacity to control his behavior was substantially impaired).
*717 The trial court found that at the time he attacked Ms. Mahaffey, Pope was intoxicated to the point that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired and he was suffering from extreme mental or emotional disturbance. In making these findings, the court considered the fact that Pope was an alcoholic who generally consumed two six packs to a case of beer per day and who had consumed at least a half case of beer prior to attacking Ms. Mahaffey. The court also considered Pope's family history of mental illness and extreme alcoholism as well as expert opinion that was based in part on that history.
Although Pope refused to be evaluated by the defense mental health expert, the expert interviewed members of Pope's family and reviewed the facts of the murder. According to the mental health expert, given his history of chronic alcohol abuse and the amount of alcohol he consumed on the night of the murder, Pope's behavior was impaired such that his impulse control was decreased and his aggression increased and his ability to appreciate the criminality of his conduct or to conform his conduct to the law was impaired. In light of this substantial mental mitigation, I do not believe this is one of the most aggravated and least mitigated murders for which the death penalty is reserved and therefore would reduce Pope's sentence to life imprisonment. Cf. Kramer v. State, 619 So.2d 274 (Fla.1993) (murder not one of the most aggravated and least mitigated where defendant had prior violent felony conviction and murder was heinous, atrocious, or cruel but defendant suffered from alcoholism and was under the influence of mental or emotional stress and his capacity to conform conduct to requirements of law was severely impaired at time of murder).
ANSTEAD, J., concurs.
NOTES
[1] Aggravating circumstances: (1) Pope was previously convicted of a felony involving the use or threat of violence to another person; and (2) the capital felony was committed for pecuniary gain. Statutory mitigating circumstances: (1) Pope committed the crime while under the influence of extreme mental or emotional disturbance; and (2) Pope's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. Nonstatutory mitigating circumstances: (1) Pope was intoxicated at the time of the offense; (2) the violence occurred subsequent to a disagreement between boyfriend and girlfriend; and (3) Pope was under the influence of mental or emotional disturbance.
[2] Whether the trial court erred by: (1) admitting excited utterances and dying declarations; (2) admitting inflammatory photographs and the victim's bloody clothes; (3) admitting collateral crime evidence (prior battery on Alice) and omitting a limiting instruction; (4) failing to instruct the jury on third-degree murder, accomplices, battery, and aggravated battery; (5) denying Pope's motion for a mistrial after a prosecutorial comment on defendant's right to remain silent; (6) changing the order of the venire and examining the verdicts before jury deliberations were completed; (7) refusing to consider three nonstatutory mitigators proposed by independent counsel; (8) sentencing Pope to death rather than life in prison; and (9) denying Pope's pretrial motion to declare Florida's death penalty statute unconstitutional.
[3] On Labor Day 1991, Pope bloodied Alice's face because she would not give him the keys to her car. They were both drunk at the time of the incident. Pope was incarcerated for the battery from Labor Day until less than a month before he killed Alice. The trial court did not admit evidence of his arrest, incarceration, or the reason he struck Alice.
[4] Section 90.404, Florida Statutes (1993), states in relevant part:

(2) OTHER CRIMES, WRONGS, OR ACTS.
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[5] Section 90.404(2)(b)2., Florida Statutes (1993) (emphasis added), states:

2. When the evidence is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information.
[6] Section 782.04(4), Florida Statutes (1991), defines third-degree (felony) murder as "an unlawful killing of a human being without any design to effect death, by a person engaged in the perpetration of, or in the attempt to perpetrate, any felony other than" the thirteen enumerated felonies, one of which is robbery.
[7] "No irregularity in the rendition or reception of a verdict may be raised unless it is raised before the jury is discharged. No irregularity in the recording of a verdict shall affect its validity unless the defendant was in fact prejudiced by the irregularity." Fla. R.Crim. P. 3.570.