781 So.2d 470 (2001)
Alfredo Fuentes PEDROSA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-909.
District Court of Appeal of Florida, Third District.
March 14, 2001.
*471 Bennett H. Brummer, Public Defender and Manuel Alvarez, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Erin K. Zack, Assistant Attorney General, for appellee.
Before GREEN and SORONDO, JJ. and NESBITT, Senior Judge.
GREEN, J.
Alfredo Fuentes Pedrosa was convicted of aggravated battery with a deadly weapon after a jury trial and sentenced to a fifteen (15) year term of incarceration, with a ten (10) year minimum mandatory as a habitual violent felony offender. He brings this appeal claiming that he is entitled to a new trial because the trial court reversibly erred in admitting the out-of-court statements of the victim and his girlfriend, where neither of them testified at trial and were not subject to cross-examination. We disagree and affirm.
During the trial below, four police officers and two detectives testified on behalf of the state. For the defense, Pedrosa testified on his own behalf. The state was unable to locate, William Tinsley, the victim, or his girlfriend to testify at trial.
Officer Paredes of the Miami-Dade County Police Department testified that he responded to a call from a Burger King restaurant located across the street from A.D. Barnes Park regarding a man who had been stabbed. Upon his arrival at the restaurant, Officer Paredes entered a bathroom where he found the victim on the floor holding his throat and bleeding profusely. The victim's throat was slit and his shirt was full of blood. The victim's speech was incoherent and he appeared to be in a daze.
Over defense objection, Officer Paredes testified that the victim, who was homeless, stated that he had gotten into an argument about Fidel Castro with a "Freddie" across the street in the park who then attacked him. The victim described Freddie as a dark-skinned Caucasian male with black hair, about 5'9" in height. A perimeter was established around the park and Pedrosa was subsequently detained.
Officer Paredes also testified that he spoke to a Ms. Quail, who identified herself as the victim's girlfriend and claimed to have witnessed the incident. The officer drove her across the street into the park where she was able to observe Pedrosa *472 while he was sitting in the rear of another police squad car. Over defense objection, Officer Paredes went on to testify that when the girlfriend saw Pedrosa, she identified him as the same person who had argued with, and stabbed her boyfriend. The officer also claimed that she later identified Pedrosa in a photo line-up.
Officer Acosta testified that he arrived as a backup at the Burger King and saw the victim in the bathroom. Officer Acosta issued a BOLO in accordance with the description provided by the victim and then went to the park to set up a perimeter in an attempt to locate the subject. He located Pedrosa inside the park with a bystander's assistance and found fresh blood in a wooden picnic shelter in the park. Officer Acosta handed Pedrosa over to Officer Sanchez approximately a minute or two after detaining him. Officer Sanchez patted Pedrosa down and found a utility knife in his left front shirt pocket.
Detective Morciego interviewed Pedrosa at the police station about the incident after Pedrosa executed a Miranda rights waiver form.[1] According to the detective, Pedrosa stated that he was homeless and that he distributed beer and cigarettes to other homeless people in the park, including the victim and his girlfriend. Upon awakening from a nap that day, he noticed that someone had stolen two dollars ($2.00) from his pocket. The victim admitted to the theft and refused to return the money, which led to a heated argument. During the argument, he told the victim to look to the side and when he did, he cut the victim's throat. Pedrosa further stated that he then ran and hid in the bushes. When the detective told Pedrosa that the victim had survived, Pedrosa stated "I must be losing my touch."
Detective Gomez was also present at this interview with Pedrosa. Detective Gomez, however, testified that Pedrosa stated that when Pedrosa confronted the victim about the missing money, the victim denied having stolen it.
Pedrosa testified that he had identified himself as "Freddie" to Officer Acosta when he was approached in the park. He admitted to stabbing the victim but claimed that he acted in self-defense. According to Pedrosa, he was sleeping on a bench in a picnic shelter when he was awakened by the victim attempting to rob him. He further testified that as the victim began to strangle him, he took the utility knife from the victim's pocket and cut the victim's throat in self-defense. Pedrosa denied having made the comment to the police that he was "losing his touch" upon being informed of the victim's survival.
After the close of the evidence, the jury returned a verdict of guilty on aggravated battery with a deadly weapon as a lesser included offense of the charge of attempted second degree murder.
On appeal, Pedrosa contends that the trial court reversibly erred in admitting the hearsay statements of the victim and his girlfriend, where neither of them testified at trial. The trial court determined, and we agree, that the victim's out-of-court statements to the police were properly admitted under the excited utterance exception to hearsay rule. See section 90.803(2), Florida Statutes (1997). An excited utterance has been defined as "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Id. In order for this exception to *473 the hearsay rule to be invoked, the following requirements must be met:
(1) there must have been an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must have been made while the person was under the stress of excitement caused by the startling event.
Stoll v. State, 762 So.2d 870, 873 (Fla. 2000), citing State v. Jano, 524 So.2d 660, 661 (Fla.1988). See also Pope v. State, 679 So.2d 710 (Fla.1996).
In this case, we think that it is clear that the victim's statements made to the police immediately after the incident qualified as excited utterances. First of all, the state correctly asserts that being slashed across the throat with a utility knife is a "startling event" sufficient to produce nervous excitement. See, e.g., Pope v. State, 679 So.2d at 713 (being beaten and stabbed was a sufficiently startling event). Second, the victim's statements to the police were made immediately after the stabbing and before there was time to contrive or misrepresent. Finally, the victim made the statements to the police while bleeding profusely and in a distressed state.
As for the victim's girlfriend's out-of-court identification of the appellant in the park and at a photo line-up, we must agree with the appellant that such statements were inadmissible hearsay where she did not testify at the trial. See Fernandez v. State, 722 So.2d 879, 881 (Fla. 3d DCA 1998) (stating that: "[a] statement of identification is not hearsay, ..., if the person making the identification also testifies at trial" (citation omitted)); see also § 90.801(2)(c), Florida Statutes (1997). Although her statements were erroneously admitted at this trial, we nevertheless find their admission to be harmless error, beyond a reasonable doubt, given all of the other evidence. See State v. Di Guilio, 491 So.2d 1129 (Fla.1986).
Affirmed.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).