854 So.2d 697 (2003)
Anthony K. HARMON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3236.
District Court of Appeal of Florida, Fifth District.
August 8, 2003.
Rehearing Denied September 24, 2003.
*698 James B. Gibson, Public Defender, and Allison Havens, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.

ON MOTION FOR REHEARING
ORFINGER, J.
We deny Appellant's motion for rehearing, but withdraw our previous opinion and substitute the following therefor.
Anthony K. Harmon appeals his judgment and sentence for burglary with an assault or battery. He contends the trial court improperly excluded certain testimony that supported his defense. We disagree and affirm.
Harmon was convicted of burglarizing Blane Morse's motel room. Morse, who worked for a Minnesota tree trimming company, was staying in a motel while working on a project in Florida. Morse testified that he had left the motel room door ajar to accommodate his roommate who did not have a key. He awoke to find Harmon, whom he did not know, hitting and choking him while screaming about money. Morse said that he struggled with Harmon until two co-workers pushed the door to his room open. Morse told the co-workers to grab Harmon because Harmon had taken his wallet, but Harmon eluded them. Morse also noticed that his green *699 duffel bag and address book were missing. Morse denied giving his address book to Harmon as collateral for drugs, and was unsure how four empty beer bottles came to be in his room.
One of Morse's co-workers testified that he heard a commotion and went to Morse's room. Harmon, whose shirt was ripped, was walking out of Morse's room as the co-worker approached. Morse was sitting on the edge of the bed, saying that Harmon had taken his wallet. A short time later, the police found Harmon nearby hiding in a large pipe. The police found Morse's address book and a motel room key among Harmon's possessions. The key opened another room at the same motel in which the police found Morse's duffle bag. Despite a search, Morse's wallet was not recovered.
During a proffer conducted outside the jury's presence, the co-worker testified that Harmon, who was angry as he left the room, said "he's [Morse] got my money." The court excluded the statement, concluding that it was irrelevant, inadmissible hearsay.
Harmon testified that he had been selling crack cocaine to Morse on credit. According to Harmon, Morse did not have any money so he "fronted" the crack to him, and took the duffle bag as collateral. On the evening of the incident, Harmon went to Morse's room to get paid. According to Harmon, while at the motel room, Morse offered Harmon more of his possessions as additional collateral in lieu of payment. Harmon declined at first, but after he and Morse had a couple of beers, Harmon agreed to take Morse's address book as additional collateral. When Morse asked for more crack, Harmon refused, and Morse then hit him over the eye with an object, drawing blood. After the fight, Harmon walked out the door, passing the two co-workers.
Harmon contends that his statement, "he's got my money" was admissible as an exception to the hearsay rule. Section 90.803(2), Florida Statutes (2001), allows the admission of "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." To be admissible under this hearsay exception:
1) The declarant must have experienced or witnessed an event startling enough to cause nervous excitement;
2) The statement must have been made while under the stress of the excitement caused by the startling event; and
3) The statement must have been made before there was time to contrive or misrepresent.
See State v. Jano, 524 So.2d 660, 661 (Fla. 1988).
We conclude that Harmon's statement meets the requirements of section 90.803(2). First, he made the statement as he emerged from a bloody fight, an event startling enough to cause nervous excitement. See Pope v. State, 679 So.2d 710, 713 (Fla.1996); Pedrosa v. State, 781 So.2d 470 (Fla. 3d DCA 2001). Second, Harmon was still under the stress of the excitement caused by the fight. The fight had ended only moments earlier, and the co-worker testified that Harmon was angry or excited when he made the statement. See Alexander v. State, 627 So.2d 35 (Fla. 1st DCA 1993). Finally, the statement was made as Harmon retreated from the fight, a period of time too short to find that there was time to contrive the story. See id. Simply because the statement may be self-serving is not a sufficient basis to exclude it. Stiles v. State, 672 So.2d 850 (Fla. 4th DCA 1996); Alexander. But our conclusion that Harmon's statement was an excited utterance, standing alone, does *700 not render the statement admissible, unless the statement is otherwise relevant. In determining whether the decision not to admit the proffered statement was an abuse of discretion, we must look at what evidence the judge had available to him at the time the ruling was made.
Harmon's counsel had reserved his right to make an opening statement. As a result, at the time the judge made his ruling, he had before him only the testimony of Morse, the alleged victim, and Morse's co-worker to whom the statement was allegedly made. The testimony of those two witnesses tended to show that Harmon had robbed Morse and did not support the defense Harmon would offer later. The judge had no way of knowing that Harmon's defense would be that he had been invited into Morse's hotel room and was defending himself against Morse's unprovoked attack.
Had the statement been offered during the defendant's case, after he had set forth his version of the incident, we would agree that the statement would have been admissible because it might support his contention that Morse owed him money for drugs and became enraged when he would not extend him further credit.[1] But when we carefully examine the evidence the trial judge had before him when he made the ruling, we fail to see how the proffered statement could be viewed as relevant. The judge had no way of knowing what defense, if any, would be asserted later in the trial Harmon should have sought to admit the statement during the presentation of his case.
AFFIRMED.
SAWAYA, C.J., concurs.
THOMPSON, J., dissents with opinion.
THOMPSON, dissenting.
I respectfully dissent. Because the majority opinion clearly states the applicable law regarding the admissibility of the hearsay as an excited utterance, I agree with that analysis. However, I disagree with my brethren when they write that the hearsay was irrelevant during the state's case in chief. Further, the majority states that the hearsay would have been admissible in the defense case, but that Harmon waived the issue or failed to preserve it. I disagree with that conclusion as well, because Harmon tried and failed to have it admitted at that point, too, finding no way around the court's earlier ruling that the statement was inadmissible hearsay and irrelevant.
During the state's case, Morse's co-worker testified that he arrived at the motel room to find Harmon leaving, and *701 Morse sitting on the bed stating that Harmon had taken his wallet. The witness was not allowed to testify about Harmon's reaction. On a proffer by the defense, the witness testified that as Harmon left the room, he angrily stated, "he's got my money." In ruling the hearsay inadmissible, the trial court ruled that even if the statement explained Harmon's actions, it did not establish a defense to a charge of battery: Well, if what had just happened, as has been testified to happened, then there certainly wasn't any question but that something of a violent act occurred, and if all this was an explanation as to why the violent act occurred, I don't think that'sIn the first place, it doesn't establish any kind of defense.
The state alleged that Harmon committed not only a battery, but a burglary. The fact that Morse may have had Harmon's money is not a defense to the allegations, but it could be inferred from Harmon's statement that the parties had a prior, drug-related business relationship and that Harmon was in the room for business purposes with Morse's consent.[1] If Harmon had Morse's consent, he could not be guilty of burglary. Relevant evidence is evidence tending to prove or disprove a material act, section 90.401, Florida Statutes (2001), and the question of consent to enter is certainly material to a burglary charge. The statement is relevant because it tends to prove Harmon's theory: (1) it gives rise to the inference that the victim left his motel room door open not for his roommate, but for Harmon and an anxiously awaited special room service; (2) it contradicts the victim's testimony that he never laid eyes on Harmon before the incident; and (3) it impeaches the victim's credibility in general.
The majority concludes that the hearsay was not relevant during the state's case because the defense theory had not been established by that time, but the cross examination of the witnesses during the state's case made it clear that the defense's position was that Harmon was in Morse's motel room with Morse's permission and in connection with drug dealings between the two. The defense asked Morse about whether he had received drugs from Harmon or had given Harmon collateral for drugs, and whether he had left the door ajar for Harmon. The defense also asked Morse, since he had testified that no co-workers had been in his room drinking, about empty beer bottles police found in his room. Even if it were true, as the majority states in support of its affirmance, that "The judge had no way of knowing that Harmon's defense would be that he was defending himself from Morse's unprovoked attack," it was obvious that the defense was attempting to show that Harmon had been invited to Morse's room for drug-related business.
Further, this statement should have been admitted during the state's case under the "rule of completeness." Where the state has elicited testimony about part of a conversation, a defendant is entitled to cross examine the witness about other relevant statements made during the conversation. Johnson v. State, 653 So.2d 1074 (Fla. 3d DCA 1995). The defense has the right to present the whole of the conversation, Steinhorst v. State, 412 So.2d 332, 338 *702 (Fla.1982), as a matter of fairness, Larzelere v. State, 676 So.2d 394, 402 (Fla.1996). See also Sweet v. State, 693 So.2d 644, 645 (Fla. 4th DCA 1997) (holding that the defense may present the entire conversation where "it goes to the heart of the ... defense"); Eberhardt v. State, 550 So.2d 102 (Fla. 1st DCA 1989) (holding that the rule of completeness generally allows admission of the balance of the conversation as well as other related conversations that in fairness are necessary for the jury to accurately perceive the whole context of what has transpired).
Alexander v. State, 627 So.2d 35 (Fla. 1st DCA 1993) is instructive:
[W]e conclude that the trial court erred in ruling that this testimony was insufficiently related to the state's direct testimony from the witnesses to be admitted on their cross-examination by the defendant during the state's case. These statements by Appellant were part of his conduct at the time of the commission of the alleged offense and thus are not merely hearsay statements but amount to conduct in the nature of a verbal act. The state's interrogation of these witnesses called for a description of what happened when the shooting occurred and what Appellant had said immediately prior to the shooting. Consequently, the court's ruling to exclude further cross-examination as to Appellant's statements at and immediately after the shooting prevented defense counsel from presenting the complete picture of the circumstances of the shooting from the perspective of these witnesses. We do not read the supreme court's opinion in Penn v. State, 574 So.2d 1079 (Fla.1991), to require, indeed, even to permit the exclusion of this evidence under the circumstances shown.

Id. at 44 (emphasis added). The instant case is similar to Alexander in that the state elicited from Morse's co-worker a description of what occurred in Morse's room. The co-worker testified that he saw Harmon leave as Morse sat on the bed stating that Harmon took his wallet. The exclusion of cross examination about what else the state's witness heard prevented Harmon's counsel from presenting a complete picture of the circumstances from the perspective of the witness. As Alexander explains, this exclusion is not required or even permitted.
The trial court also excluded the statement when Harmon testified during the defense's case. The defense did not call the co-worker to testify, but the court had already ruled his testimony irrelevant. Instead, the defense unsuccessfully tried to introduce the hearsay through Harmon himself. Just before Harmon was scheduled to testify, the state submitted a hastily drafted[2] motion in limine to exclude testimony about any potential penalties[3] and any "self-serving" hearsay. During the proffer, Harmon testified that he had sold drugs to the victim before and had been in the victim's room at least three times before the altercation. He testified that there was no burglary and that Morse struck him in the head after he refused to provide Morse any more drugs without being paid. Thus, even if the court had been previously unaware of Harmon's defensethat this was a drug deal gone awrythe court was surely aware of it by the time Harmon testified.
*703 I do not agree with the statement in footnote one of the majority opinion that Harmon's counsel "either waived or failed to preserve any alleged error for review" during the defense case. The trial court sustained the state's objection to defense counsel's attempt to introduce the statement through Harmon. During the bench conference, the trial court indicated that Harmon's attorney would not be able to lay a proper foundation for admission of the statement through Harmon.[4] When the court said Harmon could "testify as to why he did something," the court was also saying that Harmon could not repeat the statement to the jury, and hence defense counsel's response, "No. I know. I know he doesn't need to say it. All right." Since the court had already ruled the statement inadmissible hearsay and irrelevant, it would have been futile, and even discourteous, for counsel to belabor the issue at that point. See Tucker v. Allstate Ins. Co., 842 So.2d 1029 (Fla. 2d DCA 2003) (holding that under the circumstances of the court's former rulings, the issue for review was adequately preserved); Layman v. State, 728 So.2d 814, 817 (Fla. 5th DCA 1999) ("The contemporaneous objections rule is satisfied under the facts of this case because the trial court clearly understood the defendant's position and further debate would have been futile"). Thus, I would hold that the issue was adequately preserved. The trial court erred in excluding the hearsay during Harmon's case because it was as relevant during Harmon's case as it was during the state's case, although it clearly would have been better for Harmon if the hearsay had been introduced through the co-worker, an apparently neutral observer.
It is true that the statement cuts both ways for Harmon in that Morse's owing him money could be viewed to provide Harmon a motive to enter uninvited. But, if the statement had been allowed, the jury may have believed that Morse and Harmon had a relationship prior to the incident at issue, and if the jury doubted the veracity of Morse, it might also believe that the state failed to prove beyond a reasonable doubt that Harmon committed the crime of burglary (i.e., a non-consensual entry), a felony.[5] For these reasons, I cannot say the exclusion of Harmon's statement was harmless, and thus, I must dissent.
NOTES
[1] Harmon contends that he attempted to present the excited utterance during the presentation of the defense case. The trial transcript reveals that when Harmon tried to present the statement, the State made a hearsay objection. Outside the presence of the jury, the trial judge invited defense counsel to lay the predicate for the admission of the statement. Defense counsel responded to the court's offer by saying "[N]o.... I know he (Harmon) doesn't need to say it." Defense counsel then proceeded to question Harmon on other matters. We conclude that by withdrawing the question without obtaining a definitive ruling from the court, defense counsel either waived or failed to preserve any alleged error for review. "The shifting sands of the trial in progress may cause a judge to rethink an earlier evidentiary ruling based on a maturing understanding of the case." Donley v. State, 694 So.2d 149, 150 (Fla. 4th DCA 1997). The trial judge should have an opportunity to consider the evidence in light of the evidence previously admitted at trial and while a witness is present in court to testify "as to any factual inquiry made necessary by the circumstances." Gilliam v. State, 602 So.2d 986, 986 (Fla. 4th DCA 1992) (Farmer, J., concurring).
[1] The record indicates that other evidence tended to support the assertion of a prior relationship: Harmon testified that he was invited to Morse's room that evening to drink beer. Empty beer bottles were found in Morse's motel room by police, and Morse could not explain at trial whose bottles they were or how they got in his room. Harmon testified that Morse previously gave him a green duffle bag as collateral for drugs, and Morse's green duffle bag subsequently was located in Harmon's motel room.
[2] Evidently, the motion was from another case and adapted for Harmon's trial. The motion sought the exclusion of hearsay testimony about a firearm by a Mr. Mollison. Neither a firearm nor a Mr. Mollison was involved in this case.
[3] As a Prison Releasee Reoffender, Harmon was facing life in prison.
[4] MS. MERCADO: Well, can I try to lay the foundation for an excited utterance?

THE COURT: I don't think you're gonna be able to, but he's the Defendant and he can testify as to why he did something.
MS. MERCADO: Sure. I understand.
THE COURT: But I don't thinkIf you want to try to do it.
MS. MERCADO: No. I know. I know he doesn't need to say it. All right.
[5] If the jury believed that much, it might also believe that Morse attacked Harmon, as the latter testified.