GROSS, J.
Charged with attempted second degree murder, kidnapping, and criminal mischief, Alan Dixon was convicted of aggravated battery causing serious bodily injury after a jury trial. We reverse because the trial court erroneously excluded evidence that was admissible either as non-hearsay or as an exception to the rule against hearsay.

The State’s Evidence

The victim, an adult entertainer, resided in one of the two adjacent hotel rooms she shared with Dixon and another entertainer named Juanice. Although Dixon later testified that he had a boyfriend-girlfriend relationship with the victim, she described him as her pimp, a characterization that Dixon denied.
Around 2:30 a.m. on the night of the incident, the victim was in her hotel room when Dixon returned from a night out noticeably drunk; his eyes were “half closed” and his friend had to assist him to get into bed. Knowing that Juanice was still out working, the victim waited for Dixon to fall asleep and then relocated to the adjacent room.
Shortly thereafter, the victim looked out the window and saw Dixon with Juanice in the hotel parking lot, putting Juanice’s “bags on the street” before leaving in a car with his friend. The victim then received a call from Dixon, in which he angrily stated that “he didn’t want anything to do with [the victim or Juanice] anymore.”
About an hour later, Dixon and his friend returned to the hotel. They approached the victim’s room, loudly banged on her door, and yelled her name; afraid for her safety, the victim did not respond. Dixon then broke a window to her hotel room, scaring the victim and causing her to run out the front door in an attempt to escape. Dixon’s fingerprints were found on the broken window shards.
After the victim got out of the room, Dixon chased her and knocked her down in a grassy area near the parking lot. Once he subdued her, Dixon pummeled her with a flurry of punches and kicks and ended by stomping on her. Dixon then grabbed the victim by her hair and dragged her to the concrete parking lot, where he hit her about five to six more times, knocking her unconscious.
Several hours later, the victim regained consciousness and found herself in a different hotel than the one where the fight occurred. Dixon was not present when she awoke, and after a short moment, the police and an ambulance arrived. The victim had trouble remembering what transpired during the beating. Initially, she told the officers that she banged her head after falling while drunk. Days later, after looking at her injuries in a mirror, she reported to the police that Dixon had hit her.
The victim’s testimony was corroborated by a resident of the hotel, who testified that on the night of the incident she exited her hotel room after hearing glass break and saw Dixon arguing with the victim on the walkway underneath. The resident watched as Dixon began “beating on” the victim, repeatedly punching and kicking her while she curled in a fetal position, eventually culminating with Dixon picking the victim up and tossing her to the ground. After the beating stopped, Dixon grabbed the victim and “threw her in the car.” To bolster the resident’s testimony, the State presented the audio recording of her phone call to the police, where she described in detail how the beating transpired.
*531 The state also called a doctor specializing in facial trauma who testified that the victim had “some facial lacerations, lip lacerations, trauma to her upper jaw, ... fractured ... tooth, and ... injuries to her right orbit,” requiring the implantation of an absorbable implant. As a result of the reconstructive surgery, the victim will suffer several long term effects, including a slight change in appearance and “puffiness around the lower portion of the eye.”

Theory of Defense

Dixon’s theory of defense was that the victim’s injuries were primarily the result of a prior fight she had with Juanice. Dixon testified that on the night of the incident, he was hanging out with some friends at South Beach when he received numerous phone calls from the victim. Without revealing the contents of the calls, Dixon said he returned to the hotel, but saw neither the victim nor Juanice.
At about 5 a.m., Dixon began receiving more phone calls from the victim, causing him to again return to the hotel. This time, he noticed that one of the windows in the victim’s hotel room was broken. Dixon banged on the victim’s door to find out what was going on, but no one answered. Dixon then left to get breakfast with a friend.
Upon returning to the hotel, Dixon found his dog, which had been in his room, unsupervised in the parking lot and Juan-ice standing near the door to the victim’s room. After Dixon hit on the door in an attempt to defuse hostilities, the victim “all of a sudden” ran out of the room and began to physically fight with Juanice. After watching the women trade blows, Dixon broke up the fight by pulling Juan-ice off the victim. The victim then grabbed Dixon’s keys and ran towards his car, apparently intending to access the trunk, where Dixon kept knives and over-the-counter medication. Knowing that the victim had a history of depression, Dixon caught up to stop her, eventually “knock[ing] her down.”
Dixon pried the keys out of the victim’s hands and made sure that the trunk was closed. He then told the victim, who was still “acting hysterical and screaming and crying,” to get in the car, which she did on her own volition.
At that point, Dixon first observed the victim’s facial injuries, noting that, because the injuries arose from an earlier fight with Juanice, enough time had passed for the bleeding to stop. Dixon and the victim then stayed at a friend’s apartment for about four hours before getting a room at a different hotel. Dixon left the hotel for a bit and when he returned, he encountered police officers.
In closing, defense counsel argued that the State’s conflicting evidence relating to the cause of the injuries was not supported by the physical evidence presented at trial; he contended that blood stains found by the police on the original hotel room’s bed sheets showed that the victim had been engaged in a physical fight before Dixon arrived on the scene. Defense counsel opined that the absence of blood stains in Dixon’s car and in the second hotel room showed that her wounds were the result of the earlier fight.

Victim’s Phone Conversations

While Dixon was testifying, defense counsel on two separate occasions attempted to elicit testimony regarding the contents of the victim’s phone calls to Dixon when he was at South Beach.
In the first instance, after the State objected to the testimony, the trial judge told defense counsel to proffer the proposed testimony:
[Defense Counsel]: That he returned to the motel because he received a phone call from [the victim.] I’m going to es *532 tablish that it was an excited utterance, she was excited by a recent event. She was crying, screaming, upset, asking him to return home because she just had a fight with ... Juanice.
[[Image here]]
THE COURT: What’s the nature of the conversation?
[Defense Counsel]: That the complainant in this matter had a fight with the other woman who was at the hotel, Juanice ... and wanted him to come take ... Juanice[ ] out of there because she was scared.
Defense counsel offered two theories of admissibility: that the victim’s statements were an excited utterance or that they were non-hearsay because they explained why Dixon returned to the hotel from South Beach. The trial judge sustained the State’s objection to the testimony.
Later in the trial, defense counsel once again attempted to elicit similar testimony, which showed that Dixon knew upon returning to the hotel that the victim and Juanice had been fighting. To substantiate the argument, defense counsel proffered the following testimony:
[Defense Counsel]: Mr. Dixon, did you receive a phone call from [the victim]?
[Dixon]: Yes, I did.
[Defense Counsel]: Upon receiving that phone call were you able to determine, without saying what anyone said, whether there had been a recent event that caused her to become excited?
[Dixon]: Yes.
[Defense Counsel]: Without saying what she said, how did you know that she was excited? Describe her demeanor.
[Dixon]: Screaming and yelling.
[Defense Counsel]: Was she crying?
[Dixon]: No, just screaming.
[Defense Counsel]: Were you able to determine how long it had been since that exciting event until the time that you received a phone call?
[Dixon]: It was instantly it was going on.
[Defense Counsel]: Could you hear the event going on in the background of the phone call?
[Dixon]: I couldn’t hear the event, no, I didn’t, I couldn’t.
[Defense Counsel]: But you could hear her screaming?
[Dixon]: Yeah, I could hear like making a lot of noise.
[Defense Counsel]: Was she screaming?
[Dixon]: Yes.
[Defense Counsel]: What did she say to you in that phone call?
[[Image here]]
[Dixon]: ‘You better come get this bitch.”
[Defense Counsel]: Did she say who she was, to whom she was referring by “this bitch”?
[Dixon]: No, she didn’t say who, but I knew.
[Defense Counsel]: How did you know?
[Dixon]: Because [Juanice] was the only one was at the room.
[Defense Counsel]: What did you do as a result of hearing that phone call?
[Dixon]: I went over there to go see what was going on.
The trial court again sustained the State’s objection and disallowed the testimony.
Non-Hearsay Analysis
The trial court erred in excluding the testimony about the two phone conversations because the testimony was admissible either as non-hearsay or under the excited utterance exception to the hearsay rule.
*533 Hearsay is “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” § 90.801(l)(c), Fla. Stat. (2010). The Supreme Court has recognized that a statement may “be offered to prove a variety of things besides its truth.” Foster v. State, 778 So.2d 906, 914-15 (Fla.2000). If an out of court statement “ ‘is offered for some purpose other than its truth, the statement is not hearsay and is generally admissible if relevant to a material issue in the case.’ ” Jackson v. State, 25 So.3d 518, 530 (Fla.2009) (quoting Penalver v. State, 926 So.2d 1118, 1131 (Fla.2006)).
With a limiting instruction, the first phone conversation was admissible as non-hearsay. It was offered not to prove the truth of its contents — that the victim was scared because she had just had a fight with Juanice — but to show why Dixon returned to the hotel and what he expected to encounter when he returned. Similarly, the contents of the second phone call— “You better come get this bitch” — was not offered to prove that Juanice was a bitch, but to explain why Dixon returned to the hotel. The victim offered little explanation for Dixon’s violence towards her; if treated as non-hearsay, the victim’s statements in the phone calls would have allowed Dixon to recount a full, coherent story of the events. The correct version of the events was the material issue in the case — whether Dixon, for whatever reason, brought a violent conclusion to his business relationship with the victim or whether his role at the hotel was to break up a fight between roommates.
Excited Utterance Analysis
A second basis of admissibility is that the phone call statements were an exception to the section 90.802 rule against hearsay since they qualified as excited utterances within the meaning of section 90.803(2), Florida Statutes (2010). An excited utterance is “[a] statement ... relating to a startling event or condition made while the declarant [is] under the stress of excitement caused by the event or condition.” § 90.803(2), Fla. Stat. (2010).
While an excited utterance need not be contemporaneous to the event, it must be made while the declarant is under the stress of the startling event and without time for reflection.... “[W]here the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.”
Hutchinson v. State, 882 So.2d 943, 951-52 (Fla.2004), abrogated on other grounds by Deparvine v. State, 995 So.2d 351 (Fla.2008) (quoting State v. Jano, 524 So.2d 660, 661 (Fla.1988)) (citations omitted). As explained by the Florida Supreme Court, to constitute an admissible excited utterance, the qualifying statement must relate to “a startling event or condition” and
(1) the declarant must have experienced or witnessed an event startling enough to cause nervous excitement; (2) the statement must have been made while under the stress of excitement caused by the startling event; and (3) the statement must have been made before there was time to contrive or misrepresent.
Evans v. State, 838 So.2d 1090, 1093 (Fla.2002).
The rationale for allowing the excited utterance exception to the rule against hearsay is that such statements “contain sufficient guarantees of trustworthiness in that ‘the declarant does not have the reflective capacity necessary for conscious misrepresentation’ while in a state of excitement.” Strong v. State, 947 So.2d 552, 554 (Fla. 3d DCA 2006) (quoting Rogers v. State, 660 So.2d 237, 240 (Fla.1995)).
*534 Applying the three-part analysis of the Florida Supreme Court, the victim’s fight with Juanice was a startling event sufficient to generate nervous excitement. See, e.g., Harmon v. State, 854 So.2d 697, 699 (Fla. 5th DCA 2003) (finding the first prong met where the declarant “made the statement as he emerged from a bloody fight, an event startling enough to cause nervous excitement”); Hutchinson, 882 So.2d at 951 (finding a fight between defendant and his girlfriend to be sufficiently startling). While requisite “excitement” is “not a matter that is determined exclusively by tone of voice,” Dixon’s description of the victim’s verbal conduct as “crying, screaming, upset, [and] asking [him] ... to return home,” was sufficient to demonstrate that the victim was under the stress of the excitement caused by the fight at the time of her call. Hudson v. State, 992 So.2d 96, 108 (Fla.2008).
The State contends that the statements do not fall within the exception because the statements were not made before there was time to contrive or misrepresent; the State points to Dixon’s statement that he “could not hear a fight going on.” “A statement as to what occurred does not become admissible merely because the victim is still in an excited state.” Charlot v. State, 679 So.2d 844, 845 (Fla. 4th DCA 1996). Rather, if “the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.” Jano, 524 So.2d at 662 (quoting Edward W. Cleary, McCormick on Evidence § 297 at 856 (3d ed. 1984)); see also Hudson, 992 So.2d at 107 (“Time for reflective thought is significant because it also provides time to contrive or misrepresent.”).
However, “[i]f the statement occurs while the exciting event is still in progress, courts have little difficulty finding that the excitement prompted the statement.” Hudson, 992 So.2d at 107 (quoting Jano, 524 So.2d at 662); Beck v. State, 937 So.2d 821, 823 (Fla. 4th DCA 2006) (“ ‘While an excited utterance need not be contemporaneous to the event, it must be made while the declarant is under the stress of the startling event and without time for reflection.’ ” (quoting Hutchinson, 882 So.2d at 951)) (alteration removed).
Here, although Dixon could not actually hear an ongoing fight in the background of the call, he testified that the victim told him over the phone that there was an “ongoing emergency,” namely that she and Juanice were fighting. Also, Dixon described the victim’s testimony as coming the “instant” after the fight occurred, emphasizing its closeness to the event. Under such circumstances, this proffered evidence satisfied the three prongs required for an excited utterance. The credibility of the out-of-court statements is a different matter; the victim was available to contradict Dixon’s version of the calls.
The excluded phone conversations were relevant to Dixon’s case, as they would have allowed the defendant to tell a complete, coherent story of the night’s events and corroborate the defense’s theory as to (1) why Dixon returned to the hotel and, under the excited utterance exception, (2) how the victim sustained her injuries, a crucial material fact because Dixon was convicted of an offense that required the jury to find that he caused the victim “serious bodily injury.”
We do not find the error in excluding the testimony to be harmless. The harmless error rule, as defined in State v. DiGuilio, requires the State to *535 establish “that there is no reasonable possibility that the error contributed to the conviction.” 491 So.2d 1129, 1135 (Fla.1986). This rule “requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.” Id. “The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict.” Id. at 1139. Given the nature of the evidence and Dixon’s acquittal on two charges, we cannot say beyond a reasonable doubt that a more coherent defense story would not have resulted-in a jury finding that Dixon was not the cause of the victim’s serious injuries.

Reversed and remanded.

POLEN, J., and STONE, BARRY J., Senior Judge, concur.