# Supreme Court of Florida

———————

No. SC14-703

———————

**RODNEY RENARD NEWBERRY**,
Appellant,

vs.

**STATE OF FLORIDA**,
Appellee.

[April 6, 2017]

PER CURIAM.

Rodney Renard Newberry appeals his conviction for first-degree premeditated and felony murder and his sentence of death. For the reasons below, we affirm the conviction but vacate the death sentence and remand for a new penalty phase.[1]

## BACKGROUND

The trial court well explained the facts in its sentencing order:

> On December 28, 2009, Defendant [Newberry] set out to commit an armed robbery of a to-be-determined member of the Jacksonville community who happened to be located in whatever

———————

1. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

vulnerable circumstance provided Defendant the most advantageous opportunity for gain. Defendant was joined by James Phillips, who is approximately eighteen (18) years Defendant's junior, and Robert Anderson, who is approximately seventeen (17) years Defendant's junior. Both Phillips and Anderson claim to have participated in the scheme because each feared Defendant. Further, each testified that neither had any intention of joining Defendant in the shooting and killing of any human being.

When the Defendant and his accomplices assembled, Phillips had two firearms, an AK-47 and a MAC-11. Defendant had his own gun, a .357 magnum. Once in the car together, Defendant took possession of the AK-47, along with his .357 magnum. Anderson had the MAC-11. The three men proceeded to drive to the desired location to begin their search. Phillips apparently drove because he had a valid driver's license.

Defendant, Phillips[,] and Anderson began prowling Duval County in the area surrounding Myrtle Avenue. After some time, and unable to find a suitable victim to rob, Defendant suggested, and the others agreed, to move their hunt to the region around Pearl Street.

Tragically, at approximately 7:20 p.m. on that fateful day, Terrese Pernell Stevens was spotted at Club Steppin' Out. When Defendant spotted Mr. Stevens's car in the parking lot, he told Phillips to stop the car. Defendant directed Phillips to go inside the club, locate Mr. Stevens, and "chirp" Defendant to let him know when Mr. Stevens was leaving the club.[FN]

> FN. "Chirping" is a method whereby one can use a certain type of cell phone to direct connect to another cell phone merely by pressing a button. When this is done, the recipient's phone chirps.

While Phillips was in the club, and before he alerted Defendant, Defendant had Anderson move the car. Anderson was in the driver's seat when Defendant's phone chirped. He started the car and Defendant, sitting in the front passenger seat and stretching his foot across the car, pressed Anderson's foot down on the gas pedal to make the car go faster. Anderson stopped the car a few feet from Mr. Stevens's car. After [Anderson] parked the car, Defendant got out of the car with the AK-47 and ran to the driver's side of Mr. Stevens's car. Defendant yelled at Mr. Stevens to "give it up, and if you make

one {explicative} move I'll put it on my daddy that I'm going to kill you."  At that time, Anderson got out of the car with the MAC-11 and stayed by the driver's side, never firing the gun.  Without warning, and leaving Mr. Stevens little or no time to comply with Defendant's demands, Defendant fired twelve shots from the AK-47 [after, as Anderson testified at trial, Mr. Stevens said "please don't, don't, don't, don't kill me"].  Mr. Stevens was killed.

Defendant got back in the car, and before Phillips returned to the car, Anderson and Defendant drove [away].  As they drove, Defendant offered Anderson money that he took from Mr. Stevens.  At first, Anderson refused the money because it had blood on it, but eventually he took $75.00 from Defendant.  Phillips, who stayed in the club when he heard the gunshots, left the club after the police arrived.  [After the shooting, Phillips] called a friend for a ride, and [later met up with Newberry and Anderson].  Both men gave Phillips $20.00 of the money Defendant took from Mr. Stevens.

The owner of Club Steppin' Out testified that she was inside the club at the time of the shooting and, although she did not see the shooting, she heard the gunshots and called the police.  Law enforcement officers who responded to the scene testified that the victim was lying across the front seat of his vehicle and that they recovered twelve 7.62 x 39 mm rifle casings from the scene.  No weapons were recovered by law enforcement.

In the months following the crime, Michelle Massey, who saw Newberry, Phillips, and Anderson with guns earlier in the day on the day of the murder and whose phone Newberry was using on the day of the murder,[2] assisted police with

2. Massey testified that she and Newberry had switched phones so they could tell who the other person had been talking to because they were romantically involved at the time of the victim's murder.  Newberry's codefendant Phillips had the number of Massey's phone that Newberry was using stored in his phone under

obtaining information that led to Newberry being charged with the victim's murder. Prior to Newberry's trial, Anderson and Phillips both pled guilty to second-degree murder and armed robbery for their roles in the crime. Anderson also pled guilty to possession of a firearm by a convicted felon. Neither had been sentenced at the time of Newberry's trial, at which they both testified that Newberry shot the victim.

At trial, the medical examiner testified that the cause of death was multiple gunshot wounds. She identified numerous wounds, including to the victim's neck, arm, chest, abdomen, testicle, legs, hip, and buttocks, primarily on his left side, some of which were from the entire bullet going through and others of which were from glass or pieces of lead from the bullets or metal that injured the victim when he was shot through the driver's side of his car.

An FDLE crime lab analyst and firearms and tool mark expert testified that the AK-47 fires 7.62 x 39 mm ammunition and that the twelve 7.62 x 39 mm casings she examined were fired from a single firearm. She further testified that the MAC-11 fires .380 ammunition, and there is no way the MAC-11 could have fired 7.62 x 39 mm ammunition.

---

Newberry's nickname, Bones, and phone records introduced at trial established that Phillips used his phone to chirp the phone number he had stored as Newberry's at 7:21 p.m., five minutes before the 911 call reporting the shooting.

On January 31, 2014, Newberry's jury found him guilty of first-degree premeditated and felony murder and armed robbery and further found that Newberry "discharged a firearm causing death or great bodily harm during the commission of the offense."

During the penalty phase, the State presented the testimony of the victims of Newberry's four prior violent felonies as well as certified copies of Newberry's prior convictions.[3] The State also presented victim impact testimony from Mr. Stevens's wife and mother, both of whom read statements.

The defense presented the testimony of Newberry's former girlfriend and mother of his four children (and also the victim of one of Newberry's prior violent felonies), and she testified that she still holds Newberry very dear and that he has rekindled his relationship with their children. In addition, the defense presented testimony from Newberry's brother, who testified that they have a good, loving family, and that Newberry is a good, loving person who got caught up in the wrong

---

3. Newberry's four prior violent felony convictions stem from three different incidents. First, Newberry pled nolo contendere to the aggravated battery of a victim he shot 6 times. Second, Newberry pled nolo contendere to the aggravated assault of his former girlfriend and mother of his four children. Third, Newberry was convicted of the attempted first-degree murder of two police officers, both of whom Newberry shot. Newberry's crimes against the police officers occurred after Newberry murdered the victim in this case when the officers attempted to approach Newberry on the street for a purpose unrelated to the victim's murder. Newberry was tried and convicted for the crimes against the police officers before he was tried for the victim's murder.

crowd. The defense also presented testimony from Newberry's cousin, Reginald Lester, who testified to the role Newberry's faith plays in his life and that, in Lester's opinion, Newberry could make a positive difference in the lives of other inmates in prison.

Additionally, the defense presented testimony from Dr. Stephen Bloomfield, an expert in forensic and clinical psychology. Dr. Bloomfield testified that Newberry achieved a full scale IQ score of 66. Dr. Bloomfield further testified that he reviewed Newberry's school records, which revealed that Newberry had achieved a full-scale IQ score of 81, in 1977, when he was eight years old. Dr. Bloomfield explained that he "didn't diagnose [Newberry] with [intellectual disability] because in order to be diagnosed with [intellectual disability] . . . you have to be diagnosed with an IQ of less than approximately 70 prior to age 18, and you have to have low adaptive skills. All of this has to happen prior to 18. So[,] there wasn't that evidence [to] meet the criteria for [intellectual disability] or to be considered for an Atkins[v. Virginia, 536 U.S. 304 (2002),] hearing."[4]

Dr. Bloomfield acknowledged that Newberry "[d]id a lot of things in society," including maintain a job and testified that he could not say that Newberry

---

4. Newberry's trial counsel similarly represented to the trial court that Newberry is not intellectually disabled and did not meet the requirements for an Atkins hearing.

is not a leader or that he could not get other people to do things for him. He also testified that Newberry is competent and was not insane at the time of the crime and that, although Newberry "appeared depressed [and] anxious" at times, he did not diagnose Newberry with depression or anxiety and did not "diagnos[e] him with any kind of mental deficit at all," but "if there were any type of diagnosis, it would be . . . borderline intellectual functioning."

Following the penalty phase presentation, the jury recommended the death penalty by a vote of eight to four. At the subsequent Spencer[5] hearing, no additional witnesses testified, but the defense presented Newberry's school records as well as his medical records from two occasions (unrelated to the victim's murder or any of Newberry's prior violent felonies) when Newberry was himself a gunshot victim.

Thereafter, the trial court sentenced Newberry to death in accordance with the jury's recommendation, finding that the aggravating circumstances[6] outweighed the mitigating circumstances.[7]

---

5. Spencer v. State, 615 So. 2d 688 (Fla. 1993).

6. The trial court found the following statutory aggravating circumstances beyond a reasonable doubt and assigned them both great weight: (1) prior violent felony based on Newberry's four prior violent felony convictions; and (2) in the course of a robbery merged with committed for pecuniary gain.

7. The trial court found no statutory mitigating circumstances and the following nonstatutory mitigating circumstances: (1) Newberry was raised in a

## ANALYSIS

Newberry raises the following issues on appeal: (1) whether the trial court erred by allowing the State to cross-examine defense penalty phase witness Reginald Lester about his knowledge of Newberry's threat against a corrections officer; (2) whether the trial court erred in failing to find Newberry's most recent IQ score of 66 mitigating; and (3) whether Newberry's death sentence is proportionate. Because we are remanding for a new penalty phase, we do not address these penalty phase claims. However, we review whether the evidence is sufficient to support Newberry's conviction and whether Newberry's death sentence violates <u>Hurst v. State</u>, 202 So. 3d 40 (Fla. 2016), <u>petition for cert. filed</u>, No. 16-998 (U.S. Feb. 13, 2017).

---

loving home and has a family that loves and supports him (slight weight); (2) the following "mental mitigators" (a label Newberry proposed): (a) Newberry is immature and naïve for his age (slight weight); (b) Newberry suffers from depression, mood shifts, and anxiety (slight weight); (c) Newberry is very vulnerable to outside influences (slight weight); (d) Newberry has a need for approval (slight weight); (e) Newberry has poor decision-making skills (slight weight); (f) Newberry has less than adequate adaptive skills, functions, and coping skills (slight weight); (g) Newberry seems to act impulsively and this is exacerbated by drug use and his mood and affect are labile and quickly change (some weight); and (h) Newberry's test scores were low (established but not mitigating and therefore given no weight); (3) Newberry was the victim of violence (little weight); (4) Newberry exhibited good and mannerly behavior throughout the Court proceedings with the jury (established but not mitigating and therefore given no weight); and (5) Newberry was impacted by his father's death (slight weight).

- 8 -

## A. Sufficiency

"[T]his Court has a mandatory obligation to independently review the sufficiency of the evidence in every case in which a sentence of death has been imposed." Miller v. State, 42 So. 3d 204, 227 (Fla. 2010). To conduct this review, this Court "view[s] the evidence in the light most favorable to the State to determine whether a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt." Rodgers v. State, 948 So. 2d 655, 674 (Fla. 2006). Applying this standard to Newberry's case, we conclude that competent, substantial evidence supports his conviction for first-degree premeditated and felony murder. See Davis v. State, 2 So. 3d 952, 966-67 (Fla. 2008) ("In appeals where the death penalty has been imposed, this Court independently reviews the record to confirm that the jury's verdict is supported by competent, substantial evidence.").

Specifically, the evidence in Newberry's case includes eyewitness testimony that Newberry shot the victim multiple times with an AK-47 after demanding that the victim "give it up" and ignoring the victim's pleas for his life. Telephone records corroborate eyewitness testimony that Newberry was the shooter. Further, shell casings recovered from the crime scene, which were fired by a single weapon, match the type of ammunition fired by an AK-47. This evidence is sufficient to support Newberry's conviction for first-degree premeditated and felony murder.

## B.  Hurst

Next, we consider whether Newberry is entitled to relief after the United States Supreme Court issued its decision in Hurst v. Florida, 136 S. Ct. 616 (2016). Because the jury recommended the death penalty by a vote of eight to four, we conclude that Newberry's death sentence violates Hurst.  See Kopsho v. State, 209 So. 3d 568, 570 (Fla. 2017); cf. Davis v. State, 207 So. 3d 142, 173-75 (Fla. 2016). We must then consider whether the Hurst error was harmless beyond a reasonable doubt:

> The harmless error test, as set forth in Chapman[v. California, 386 U.S. 18 (1967),] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

Hurst, 202 So. 3d at 68 (quoting State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986)).

Because the jury in this case recommended death by a vote of eight to four, "we cannot determine that the jury unanimously found that the aggravators outweighed the mitigation." Kopsho, 209 So. 3d at 570.  "We can only determine that the jury did not unanimously recommend a sentence of death." Id.  Therefore, because we cannot say that there is no possibility that the error did not contribute to the sentence, the error in Newberry's sentencing was not harmless beyond a reasonable doubt.

Accordingly, we vacate the death sentence and remand for a new penalty phase.  See Hurst, 202 So. 3d at 69.

## CONCLUSION

For the foregoing reasons, we affirm Newberry's conviction but remand for a new penalty phase.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, POLSTON, and LAWSON, JJ., concur as to the conviction and dissent as to the sentence.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
      Adrian Gentry Soud, Judge - Case No. 162012CF009296AXXXMA

Clinton Andrew Thomas, Public Defender, and Nada M. Carey, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

      for Appellant

Pamela Jo Bondi, Attorney General, and Jennifer L. Keegan, Assistant Attorney General, Tallahassee, Florida,

      for Appellee