# Supreme Court of Florida

_____

No. SC18-1133
_____

**RODNEY RENARD NEWBERRY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

December 12, 2019

PER CURIAM.

This case is before the Court on direct appeal from a resentencing.[1]  Rodney Newberry appeals his sentence of death for the 2009 first-degree murder of Terrese Pernell Stevens.  For the reasons we explain, we affirm Newberry's death sentence.

## I. BACKGROUND

We set forth the following facts in Newberry's first direct appeal:

> On December 28, 2009, Defendant [Newberry] set out to commit an armed robbery of a to-be-determined member of the Jacksonville community who happened to be located in whatever vulnerable circumstance provided Defendant the most advantageous opportunity for gain. Defendant was joined by James Phillips, who is

_____

1.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

approximately eighteen (18) years Defendant's junior, and Robert Anderson, who is approximately seventeen (17) years Defendant's junior. Both Phillips and Anderson claim to have participated in the scheme because each feared Defendant. Further, each testified that neither had any intention of joining Defendant in the shooting and killing of any human being.

When the Defendant and his accomplices assembled, Phillips had two firearms, an AK–47 and a MAC–11. Defendant had his own gun, a .357 magnum. Once in the car together, Defendant took possession of the AK–47, along with his .357 magnum. Anderson had the MAC–11. The three men proceeded to drive to the desired location to begin their search. Phillips apparently drove because he had a valid driver's license.

Defendant, Phillips[,] and Anderson began prowling Duval County in the area surrounding Myrtle Avenue. After some time, and unable to find a suitable victim to rob, Defendant suggested, and the others agreed, to move their hunt to the region around Pearl Street.

Tragically, at approximately 7:20 p.m. on that fateful day, Terrese Pernell Stevens was spotted at Club Steppin' Out. When Defendant spotted Mr. Stevens's car in the parking lot, he told Phillips to stop the car. Defendant directed Phillips to go inside the club, locate Mr. Stevens, and "chirp" Defendant to let him know when Mr. Stevens was leaving the club.

While Phillips was in the club, and before he alerted Defendant, Defendant had Anderson move the car. Anderson was in the driver's seat when Defendant's phone chirped. He started the car and Defendant, sitting in the front passenger seat and stretching his foot across the car, pressed Anderson's foot down on the gas pedal to make the car go faster. Anderson stopped the car a few feet from Mr. Stevens's car. After [Anderson] parked the car, Defendant got out of the car with the AK–47 and ran to the driver's side of Mr. Stevens's car. Defendant yelled at Mr. Stevens to "give it up, and if you make one {explicative} move I'll put it on my daddy that I'm going

to kill you." At that time, Anderson got out of the car with the MAC–11 and stayed by the driver's side, never firing the gun. Without warning, and leaving Mr. Stevens little or no time to comply with Defendant's demands, Defendant fired twelve shots from the AK–47 [after, as Anderson testified at trial, Mr. Stevens said "please don't, don't, don't, don't kill me"]. Mr. Stevens was killed.

Defendant got back in the car, and before Phillips returned to the car, Anderson and Defendant drove [away]. As they drove, Defendant offered Anderson money that he took from Mr. Stevens. At first, Anderson refused the money because it had blood on it, but eventually he took $75.00 from Defendant. Phillips, who stayed in the club when he heard the gunshots, left the club after the police arrived. [After the shooting, Phillips] called a friend for a ride, and [later met up with Newberry and Anderson]. Both men gave Phillips $20.00 of the money Defendant took from Mr. Stevens.

The owner of Club Steppin' Out testified that she was inside the club at the time of the shooting and, although she did not see the shooting, she heard the gunshots and called the police. Law enforcement officers who responded to the scene testified that the victim was lying across the front seat of his vehicle and that they recovered twelve 7.62 x 39 mm rifle casings from the scene. No weapons were recovered by law enforcement.

In the months following the crime, Michelle Massey, who saw Newberry, Phillips, and Anderson with guns earlier in the day on the day of the murder and whose phone Newberry was using on the day of the murder, assisted police with obtaining information that led to Newberry being charged with the victim's murder. Prior to Newberry's trial, Anderson and Phillips both pled guilty to second-degree murder and armed robbery for their roles in the crime. Anderson also pled guilty to possession of a firearm by a convicted felon. Neither had been sentenced at the time of Newberry's trial, at which they both testified that Newberry shot the victim.

*Newberry v. State*, 214 So. 3d 562, 563-65 (Fla. 2017) (alterations in original)

(footnotes omitted) (quoting trial court's order).

The jury found Newberry "guilty of first-degree premeditated and felony murder and armed robbery and further found that Newberry 'discharged a firearm causing death or great bodily harm during the commission of the offense.' " *Id.* at 565. This Court "affirm[ed] the conviction but vacate[d] the death sentence and remand[ed] for a new penalty phase," concluding that "Newberry's [first] death sentence violate[d] *Hurst*[2]." *Id.* at 563, 567.

During the second penalty phase proceeding, the State presented the testimony of thirteen witnesses in addition to four victim impact witnesses. Four of the witnesses presented were the victims of Newberry's four prior violent felonies.[3] Further, the State presented certified copies of Newberry's prior convictions. The State also presented photographs of Mr. Stevens, the victim in this case, as a child and as an adult with his family.

---

2. *Hurst v. Florida*, 136 S. Ct. 616 (2016); *Hurst v. State*, 202 So. 3d 40 (Fla. 2016).

3. Newberry's four prior violent felony convictions stem from three different incidents. First, Newberry pled nolo contendere to the aggravated battery of a victim he shot six times. Second, Newberry pled nolo contendere to the aggravated assault of his former girlfriend and mother of his four children. Third, Newberry was convicted of the attempted first-degree murder of two police officers, both of whom Newberry shot. Newberry's crimes against the police officers occurred after Newberry murdered Mr. Stevens, the victim in this case, when the officers attempted to approach Newberry on the street for a purpose unrelated to Mr. Stevens's murder. Newberry was tried and convicted for the crimes against the police officers before he was tried for Mr. Stevens's murder.

The defense presented the testimony of six witnesses, including Newberry's former girlfriend and mother of his four children (and also the victim of one of Newberry's prior violent felonies), Newberry's cousin, Newberry's daughters, and two expert witnesses. In addition, the defense introduced photos of Newberry with his family, as well as cards he sent to family members while he was incarcerated, and Newberry's school records. Further, the defense presented the judgment and sentence forms for the convictions of Robert Anderson and James Phillips for their roles in Mr. Stevens's murder.

The defense presented the expert testimony of Dr. Stephen Bloomfield. Dr. Bloomfield, an expert in forensic and clinical psychology, testified that Newberry's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. Dr. Bloomfield also testified that Newberry achieved full-scale IQ scores of 66 and 65. Dr. Bloomfield further testified that he reviewed Newberry's school records, which revealed that Newberry had achieved a full-scale IQ score of 81 when he was eight years old. Dr. Bloomfield explained that he "wasn't able to diagnose [Newberry] as intellectually disabled because he had an 81 IQ as a child, and the criteria for intellectual disability requires an IQ "less than 71 or 72, has to have low adaptive behaviors and it has to all be before the age of 18." Dr. Bloomfield acknowledged that Newberry is able to function in society, including maintaining a job. He also

testified that Newberry was competent at the time of the crime but "is still intellectually impaired."

The defense also presented the expert testimony of Dr. Steven Gold, a psychologist who specializes in trauma psychology. Dr. Gold testified that he had no reason to believe that Newberry was not able to appreciate the criminality of his conduct. Dr. Gold also testified that Newberry was able to conform his conduct to the requirements of the law. When asked if he was aware of Dr. Bloomfield's opinion that Newberry is not able to appreciate the criminality of his conduct or conform his conduct to the requirements of the law, Dr. Gold responded that he did not share that opinion in terms of Newberry's traumatization.

The State presented rebuttal evidence through the testimony of a former homicide detective who interviewed Newberry related to the investigation of Newberry's prior violent felonies involving the attempted first-degree murder of two police officers.

At the conclusion of the second penalty phase, the jury unanimously found the State proved the following aggravating circumstances beyond a reasonable doubt: (1) Newberry was previously convicted of a felony involving the use or threat of violence to the person; (2) Newberry committed the capital felony while he was engaged in the commission of, or an attempt to commit, a robbery; and (3) Newberry committed the capital felony for pecuniary gain. The jury unanimously

found that the aggravating factors were sufficient to warrant a death sentence.

Following the interim standard jury instructions at the time of the second penalty

phase proceeding set forth in *In re Standard Criminal Jury Instructions in Capital*

*Cases*, 214 So. 3d 1236, 1239-40 (Fla. 2017) [4] (authorizing proposed jury

instructions for publication on an interim basis in light of *Hurst*), Newberry's jury

also made specific findings as to each of the proposed mitigating circumstances in

the verdict form. The jury unanimously found Newberry failed to establish by the

greater weight of the evidence any of his argued mitigating circumstances. The

jury also unanimously concluded the aggravating factors outweighed the mitigating

circumstances argued by Newberry. The jury ultimately and unanimously

concluded that Newberry should be sentenced to death.

At the subsequent *Spencer*[5] hearing, no additional witnesses testified, but the

defense presented Newberry's medical records pertinent to Dr. Gold's testimony.

In its sentencing order, the trial court made its own findings with respect to the

aggravation and mitigation. Specifically, the trial court assigned the following

statutory aggravating circumstances great weight: (1) prior violent felony based on

---

4. Subsequently, in *In re Standard Criminal Jury Instructions in Capital Cases*, 244 So. 3d 172, 174 (Fla. 2018), this Court removed the requirement of the jury to list the mitigating circumstances found or to provide the jury vote as to the existence of mitigating circumstances.

5. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

Newberry's prior violent felony convictions, and (2) in the course of a robbery merged with pecuniary gain. The trial court found that "the aggravating factors are sufficient to warrant the death penalty."

The trial court further considered the two statutory mitigating circumstances: (1) the capacity of Newberry to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, and (2) the existence of any other factors in Newberry's background that would mitigate against imposition of the death penalty. As to the first, the trial court found that Newberry failed to establish this mitigating circumstance. The second "catch all" statutory mitigating circumstance contained thirty-six proposed mitigating circumstances with the trial court's conclusions relevant to each detailed parenthetically: (1) Newberry was raised by both his mother and his father (established but not mitigating); (2) Newberry's mother and father believed in discipline but not abuse (established but not mitigating); (3) Newberry's father and mother were married until the day his father died in 1999 (established but not mitigating); (4) Newberry's father's death had a great impact on Newberry (established but not mitigating); (5) Newberry's mother was a housewife and raised all eight Newberry children (established but not mitigating); (6) Newberry is the youngest of eight children born to his parents (established but not mitigating); (7) Newberry was polite to his teachers (not established); (8) Newberry loves his family (established but not mitigating); (9)

Newberry's family loves him (established but not mitigating); (10) Newberry had trouble in school (established but not mitigating); (11) Newberry and his siblings were allowed to stay in the family home until they were ready to leave (not established); (12) Newberry left the family home at twenty years old (established but not mitigating); (13) Newberry will never be released from prison if he is sentenced to life without the possibility of parole (accurate but not mitigating); (14) Newberry is immature mentally and emotionally (established, slight weight); (15) Newberry participated in an Exceptional Student Program, required an Individualized Education Program in grade school, and was placed in special classes for students with behavioral problems (established but not mitigating); (16) Newberry took special education classes in high school (not established); (17) Newberry is kind to his elders (established but not mitigating); (18) Newberry is very giving of what he has (not established); (19) Newberry is protective of his family and friends (established but not mitigating); (20) Newberry is depressed (established but not mitigating); (21) Newberry has children and grandchildren (established but not mitigating); (22) Newberry has four children with the same woman and loves his children, and his children love him (established but not mitigating); (23) Newberry has poor impulse control, and this was exacerbated by alcohol and drug use (established but not mitigating); (24) Newberry, in the past, has demonstrated concern for others and is not selfish (established but not

mitigating); (25) Newberry is respectful (not established); (26) Newberry believes in God, is a Christian, and considers himself to be devoutly religious (established but not mitigating); (27) Newberry was short-tempered before age thirteen (established but not mitigating); (28) Newberry had difficulty completing tasks that require concentration (not established); (29) Newberry had repeated trouble with school authorities during his elementary school years (established but not mitigating); (30) Newberry is a loyal friend (established but not mitigating); (31) Newberry was the victim of violence (established but not mitigating); (32) Newberry suffers from post-traumatic stress disorder (established but not mitigating); (33) Newberry suffers from a low IQ (established, slight weight); (34) Newberry is intellectually impaired (established, moderate weight); (35) codefendants Robert Anderson and James Phillips received sentences of twenty-five years in prison following entering pleas of guilty to second-degree murder for the murder of Mr. Stevens (established but not mitigating); and (36) Newberry acted under the direction of James Phillips who coordinated the armed robbery of Mr. Stevens (not established). The trial court also reviewed each remaining statutory mitigating circumstance and found that Newberry "did not present any evidence to support these other statutory mitigating circumstances."

Ultimately, the trial court sentenced Newberry to death, finding that the aggravating circumstances heavily outweighed the mitigating circumstances. The

trial court stated that "the jury's recommendation for the death penalty is consistent with its verdict and based on the evidence presented is well-reasoned."  The trial court "wholly agree[d] with the jury's unanimous recommendation based on an assessment of the aggravating circumstances and mitigating circumstances presented."

## II.  ANALYSIS

Now on appeal from the second penalty phase, Newberry raises the following claims: (A) the trial court committed fundamental error by failing to instruct the jury that it must determine beyond a reasonable doubt the sufficiency of the aggravating factors and whether they outweighed the mitigating circumstances; (B) the trial court erred in determining that the impaired capacity mitigating circumstance had not been proven; (C) the trial court failed to give sufficient consideration to Newberry's proposed mitigating circumstances; (D) the trial court erred in ruling that five mitigators were proven but "not mitigating"; (E) Newberry's death sentence is not proportionate; and (F) the trial court erred in denying Newberry's motion to bar imposition of the death penalty due to intellectual impairment.  We address each claim in turn.

### A. Sufficiency of the Jury Instructions During the Penalty Phase

Newberry first argues that the trial court erred in failing to instruct the jury that it must determine beyond a reasonable doubt whether the aggravating factors

were sufficient to justify the death penalty and whether those factors outweighed the mitigating circumstances. Newberry concedes that he failed to request the jury instruction but claims that the trial court's failure to instruct on the beyond a reasonable doubt standard of proof constitutes fundamental error. However, we have held that these determinations are not subject to the beyond a reasonable doubt standard of proof. *See Rogers v. State*, 44 Fla. L. Weekly S208, S212 (Fla. Sept. 5, 2019) ("[T]hese determinations are not subject to the beyond a reasonable doubt standard of proof, and the trial court did not err in instructing the jury."). Accordingly, we conclude that the trial court did not err in instructing the jury.

### B. Impaired Capacity Mitigating Circumstance

Next, Newberry argues that the trial court erred in concluding that the impaired capacity mitigating circumstance had not been proven. Specifically, Newberry argues that no competent, substantial evidence refuted Dr. Bloomfield's testimony that Newberry's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. We disagree.

Here, the trial court's rejection of the impaired capacity mitigating circumstance is supported by competent, substantial evidence. During the second penalty phase proceeding, two experts, Dr. Bloomfield and Dr. Gold, testified on behalf of the defense. First, Dr. Bloomfield testified that the capacity of Newberry

- 12 -

to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. To the contrary, Dr. Gold testified that he found no reason to believe Newberry could not appreciate the criminality of his conduct at the time of Mr. Stevens's murder or conform his conduct to the requirements of law. Accordingly, the trial court's finding that the impaired capacity mitigating circumstance had not been proven was supported by Dr. Gold's expert witness testimony and therefore was supported by competent, substantial evidence.

Further, this Court has upheld a trial court's rejection of a mental health mitigating circumstance when a defendant's purposeful actions during and after the crime indicated that he was aware of the criminality of his conduct. *See Hoskins v. State*, 965 So. 2d 1, 18 (Fla. 2007) (concluding that the trial court properly rejected the defendant's inability "to appreciate the criminality of his or her conduct" as mitigation where, after raping the victim, "Hoskins's purposeful actions in binding and gagging [the victim] before placing her in the trunk, driving to his parents' home six hours away, borrowing a shovel, driving to a remote area where he killed [the victim], and then telling his brother he hit a possum when blood was noticed dripping from the rear wheel well [were] indicative of someone who knows his conduct is wrong"); *Nelson v. State*, 850 So. 2d 514, 531 (Fla. 2003) (concluding that the defendant's "purposeful actions [were] indicative of someone who knew

those acts were wrong and who could conform his conduct to the law if he so desired").

Here, the trial court's finding regarding the impaired capacity mitigating circumstance is supported by evidence related to the purposefulness of Newberry's actions. Specifically, as the trial court explained:

> The jury heard testimony from Robert Anderson who participated along with James Phillips in Mr. Steven's murder. According to Anderson, Defendant asked and paid Anderson's mother to use her car the night of the murder. Anderson testified Defendant was the leader that night as they drove around looking for someone to rob. Anderson further testified the men were only going to rob someone without any "murder or shooting." Anderson explained Defendant directed them to go to Club Steppin' Out where Stevens would be. When they got there, according to Anderson who was behind the wheel, Phillips, went in the club to alert the others when Stevens was leaving. Anderson said that when the alert came that Stevens was exiting the club, Defendant told Anderson to "crank up the car." Anderson recounted that as he drove across the street to the club at a slow pace, Defendant put his foot on top of Anderson's foot that was on the gas pedal and pushed Anderson's foot down to speed up the car. When the car stopped, Defendant "hopped out of the car with an AK-47," demanded Stevens give it up, and then shot Stevens multiple times.

Accordingly, we reject this argument.

### C. Sufficiency of the Sentencing Order

Newberry generally claims that the trial court failed to thoughtfully and comprehensively analyze twenty-five proposed mitigating circumstances in accordance with this Court's decision in *Campbell v. State*, 571 So. 2d 415, 419-20 (Fla. 1990), *receded from on other grounds by Trease v. State*, 768 So. 2d 1050,

- 14 -

1055 (Fla. 2000), failed to articulate why those mitigating circumstances were "not mitigating," and instead summarily disposed of them.

Contrary to Newberry's argument, the sentencing order here does expressly evaluate each proposed mitigating circumstance. Further, in our recent decision in *Rogers*, 44 Fla. L. Weekly at S213-14, we clarified that our decision in *Campbell* did not impose a requirement that a trial court expressly and specifically articulate why the evidence presented warranted only the allocation of a certain weight to a mitigating circumstance. We receded from *Oyola v. State*, 99 So. 3d 431 (Fla. 2012), "to the extent that it employed a requirement that a trial court expressly articulate why the evidence presented warranted the allocation of a certain weight to a mitigating circumstance." *Rogers*, 44 Fla. L. Weekly at S214. Accordingly, Newberry's claim is without merit.

### D. Consideration of Five Mitigating Circumstances

Next, Newberry argues the trial court erred when it found five mitigating circumstances were established but "not mitigating." Specifically, Newberry contends the trial court considered five mitigating circumstances not mitigating as a matter of law. We reject this argument.

In the present case, the jury unanimously found Newberry failed to establish by the greater weight of the evidence any of his argued mitigating circumstances. Further, the trial court found the following proposed mitigating circumstances to

- 15 -

be established but "not mitigating": (1) Newberry struggles with depression; (2) Newberry's ineligibility for parole if sentenced to life in prison; (3) Newberry's placement in special education classes as a child; (4) Newberry's loving relationship with his family; and (5) Newberry's poor impulse control. Accordingly, it is apparent that the trial court considered each of the mitigating circumstances proposed by Newberry and determined that such circumstances were in fact not mitigating and assigned them no weight. There is no indication that the trial court abused its discretion. *See Hoskins*, 965 So. 2d at 18-19 (concluding that the trial court did not abuse its discretion in failing to attach "real weight" to the mitigating evidence); *see also Coday v. State*, 946 So. 2d 988, 1003 (Fla. 2006) ("[E]ven where a mitigating circumstance is found a trial court may give it no weight when that circumstance is not mitigating based on the unique facts of the case."). Therefore, we reject Newberry's argument.

### E. Proportionality

Newberry also argues that his death sentence is disproportionate because his case is among neither the most aggravated nor the least mitigated of first-degree murder cases. To ensure uniformity of sentencing in death penalty proceedings, this Court considers the totality of circumstances and compares each case with other capital cases; we do not simply compare the number of aggravating and mitigating circumstances. *Taylor v. State*, 937 So. 2d 590, 601 (Fla. 2006).

- 16 -

"Further, in a proportionality analysis, this Court will accept the weight assigned by the trial court to the aggravating and mitigating factors." *Hayward v. State*, 24 So. 3d 17, 46 (Fla. 2009). "In performing a proportionality review, a reviewing court must never lose sight of the fact that the death penalty has long been reserved for only the most aggravated and least mitigated of first-degree murders." *Urbin v. State*, 714 So. 2d 411, 416 (Fla. 1998).

Here, the trial court assigned the following statutory aggravating circumstances great weight: (1) prior violent felony based on Newberry's prior violent felony convictions, and (2) in the course of a robbery merged with pecuniary gain. While the jury unanimously found Newberry failed to establish by the greater weight of the evidence any of his argued mitigating circumstances, the trial court found that twenty-six of the mitigating circumstances were established but not mitigating, found that Newberry failed to establish seven of the mitigating circumstances, and assigned slight weight to two mitigating circumstances (Newberry suffers from a low IQ and Newberry is immature mentally and emotionally) and moderate weight to one mitigating circumstance (Newberry is intellectually impaired).

We have found the death sentence proportionate in other robbery-murder cases with similar aggravation and mitigation. *See, e.g.*, *McLean v. State*, 29 So. 3d 1045, 1052 (Fla. 2010) (death penalty proportionate in shooting robbery-murder

- 17 -

where the trial court found the aggravators of felony probation, prior violent felony (including a prior armed robbery conviction), and during the course of a robbery; the two statutory mental health mitigating circumstances; and several nonstatutory mitigating circumstances, including brain injury, poor grades in school, family problems, and substance abuse); *Hayward*, 24 So. 3d at 46-47 (death penalty proportionate in shooting robbery-murder where the trial court found the aggravators of prior violent felony (based on three prior violent felonies, including second-degree murder) and in the course of a robbery merged with pecuniary gain; no statutory mitigators; and several nonstatutory mitigators, including that the defendant had academic problems, grew up without a father, was loved by his family, would make a good adjustment in prison, and had some capacity for rehabilitation); *Blake v. State*, 972 So. 2d 839, 846-50 (Fla. 2007) (death penalty proportionate in attempted-robbery and shooting murder where the trial court found aggravators of prior violent felony, felony probation, and in the course of attempted armed robbery merged with pecuniary gain; statutory age mitigator; and several nonstatutory mitigators, including never displayed violence in the presence of his family, was a good son, and formed a loving relationship with his family; was remorseful for his conduct; cooperated with deputies at the time of his arrest; and adjustment to confinement and institutional living and no danger to the community at large if incarcerated for life); *Pope v. State*, 679 So. 2d 710, 716

(Fla. 1996) (death penalty proportionate in robbery-murder where the trial court found aggravators of prior violent felony and pecuniary gain; two statutory mental health mitigating circumstances; and three nonstatutory mitigating circumstances, including the defendant was intoxicated at the time of the offense).

Therefore, we conclude that Newberry's death sentence is proportionate.

## F.  Intellectual Impairment Claim

As his final claim, Newberry argues that we should extend the application of *Atkins v. Virginia*, 536 U.S. 304 (2002), to individuals who are not intellectually disabled but are intellectually impaired.  However, this Court has consistently rejected claims to extend *Atkins* beyond intellectual disability.  *See, e.g.*, *McCoy v. State*, 132 So. 3d 756, 775 (Fla. 2013) (rejecting claim that mental illness bars execution under *Atkins*); *Simmons v. State*, 105 So. 3d 475, 510-11 (Fla. 2012) (rejecting claim that persons with mental illness must be treated similarly to those with an intellectual disability due to reduced culpability); *Lawrence v. State*, 969 So. 2d 294, 300 n.9 (Fla. 2007) (rejecting claim that "the Equal Protection Clause requires this Court to extend *Atkins* to the mentally ill").  Accordingly, we conclude that the trial court did not err in denying Newberry's motion to bar imposition of the death penalty due to intellectual impairment.

## III.  CONCLUSION

Based upon the reasons stated above, we affirm Newberry's death sentence.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Adrian G. Soud, Judge - Case No. 162012CF009296AXXXMA

Andy Thomas, Public Defender, and Richard M. Bracey, III, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

    for Appellant

Ashley Moody, Attorney General, and Michael T. Kennett, Assistant Attorney General, Tallahassee, Florida,

    for Appellee